Sandra SILVER, Plaintiff-Appellant,

v.

KCA, INC., Defendant-Appellee.

No. 76–1413.

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1978.

Rehearing Denied Dec. 28, 1978.

Michael H. Weiss (argued), San Francisco, Cal., for plaintiff-appellant.

James H. Quirk (argued), of Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant-appellee.

Before GOODWIN and HUG, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

This is an appeal from a final judgment and order in an employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The case was tried without a jury and was dismissed at the close of the plaintiff's case. We affirm the judgment of the district court in all respects.

I.

Sandra Silver, a white woman, was employed as an experienced draftswoman by

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

defendant Kirker, Chapman & Associates, now KCA, Inc. (KCA), from May 11 until June 12, 1970. Among her responsibilities were drafting, maintenance of certain drafting equipment, graphics, ordering supplies, and training a draftsman trainee, a black man named John Spencer. Her work was done in a large open area containing work spaces for a number of persons. Among these was one Robert Warrington, an older white man.

On June 9, 1970, Silver found that certain drafting equipment had been left uncleaned and complained out loud to no one in particular that she would have to come in during the weekend to clean it. Warrington responded, "Why don't you let that jungle bunny do it?" and indicated that he was referring to Spencer, Silver's trainee, who was not present. Silver responded that she did not know any "jungle bunnies" and later told Spencer what Warrington had said. That afternoon Silver, Spencer, and a second black employee of KCA confronted Warrington in the coffee room and demanded an apology, which they received.

Two days after this incident, Silver's supervisor, James Lubin, fired her. KCA maintained in answers to interrogatories that the reasons for Silver's discharge were her "low efficiency in relation to compensation" and her excessive conversation during working time. She claims, however, that KCA discharged her in retaliation for her opposition to Warrington's racial slur.

After having been fired, Silver filed an informal charge with the Equal Employment Opportunity Commission (EEOC) on June 15, 1970, and a formal charge on September 29, 1970, alleging a violation of § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). After exhausting her administrative remedies under § 706(f)(1) of the Act, 42 U.S.C. § 2000e–5(f)(1), she commenced this action in the District Court for the Northern District of California. The trial was bifurcated, and the plaintiff presented her case on the issue of liability only. On the defendant's motion, the case was dismissed under Federal Rule of Civil Procedure 41(b), on the ground that Silver had failed to make out a prima facie case of discriminatory discharge for opposition to any act of her employer. The defendant was awarded $61.71 in costs but was denied attorneys' fees.

## II.

The issue before this court is a purely legal one. Can an employer's discharge of an employee constitute an unlawful employment practice in violation of § 704(a),[1] if the basis for the discharge is the employee's opposition to a racially discriminatory act of a co-worker rather than to any unlawful employment practice by the employer? Because we hold that this question must be answered in the negative, we need not consider the sufficiency of the plaintiff's proof that KCA's actual motive in discharging her was a "retaliatory" one. Even if the discharge was entirely based on

---

1. Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), provides in relevant part:

    It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

    Section 703(a)(1) of the Act, 42 U.S.C. § 2000e–2(a)(1), defines other unlawful employment practices by employers. It provides in relevant part:

    It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

Besides employers, the only other entities capable of committing unlawful employment practices under the Act are employment agencies, labor organizations, training programs, and educational institutions. *See id.* §§ 703(a)–(e), 704(a), (b), 42 U.S.C. §§ 2000e–2(a)–(e), 2000e–3(a), (b). A co-employee, acting in an individual capacity, is incapable of committing an unlawful employment practice.

her response to Warrington's racial slur against Spencer, the defendant did not violate Title VII.

Under § 704(a), an employer's discharge of an employee can violate the section in either of two ways: (1) if the discharge occurs because of the employee's opposition to conduct made an unlawful employment practice by the subchapter, or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions.[2] Silver relies primarily on the first clause, arguing that her opposition to Warrington's remark was protected.

■ By the terms of the statute, however, not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual. In addition, the means of opposition chosen must be legal, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and reasonable in view of the employer's interest in maintaining a harmonious and efficient operation, *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976). Silver does not argue here that Warrington's remark can be imputed to KCA under an agency theory. No "practice" of any kind by KCA or by any other employer[3] is thus involved as the subject of Silver's protest, nor is any aspect of the employer-employee relationship.[4]

■ Silver argues, nonetheless, that the policy considerations and congressional purposes underlying Title VII require protection of an employee who opposes "a racially derogatory incident." We think she misconstrues the thrust of the statute. The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees. The "incident" to which Silver reacted was not conduct of KCA's or conduct for which it was responsible. While Warrington's remark could be construed as a racially derogatory slur, it simply was not the sort of conduct which Title VII was enacted to prohibit. We bear in mind the fact that Title VII must be construed liberally in order to effectuate the broad remedial purpose of Congress "to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination." *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971). Were we to follow Silver's argument, however, and extend the protection of the statute to the situation in which no employment practice of an employer was involved, but only an isolated incident between co-workers, we would clearly exceed the intent of Congress and the plain language of the statute. This we cannot do.

■ Silver relies heavily on cases which hold that a single act may constitute an unlawful employment practice under § 704(a). See, *e. g., King v. Laborers Inter-*

2. The EEOC interprets this protected "opposition" broadly as including the employee's threat to file a charge. EEOC Compliance Manual, *704(a) Discrimination*, § 492.1(a) [¶ 6951] (1975).

3. Under the EEOC's guidelines, an employee's opposition to any unlawful employment practice, whether of his own employer or of some other employer, is protected. *Id.* § 492.2(e) [¶ 6952], § 493.5 [¶ 7005].

4. Amicus curiae Equal Rights Advocates, Inc. would construe § 704(a) as protecting an employee who opposes "apparently or potentially discriminatory employment practices," particularly since Title VII relies principally upon workers for its enforcement. The issue of apparent or potential unlawful employment

practices, however, is not fairly raised by the present case. There is no evidence in the record that Silver considered Warrington's remark to be an apparently or potentially discriminatory "employment practice" of an employer. It is clear that she perceived it and responded to it as the act of an individual co-worker, not in any way the act of her employer. She did not even protest it to KCA, but protested directly to the offender and apparently considered the matter closed when an apology was demanded and obtained from him. The words "employment practice" are the key to any Title VII action, and unless a plaintiff's act of opposition occurs in the context of the employment relationship, Title VII does not reach it.

*national Union, Local 818,* 443 F.2d 273 (6th Cir. 1971). These cases, however, are inapplicable, for they differ from Silver's in one vital respect: In all of them, the single act which the employee opposed was an act of the employer or another *which constituted an unlawful employment practice.* Silver's opposition, by contrast, was expressed to a co-worker about that co-worker's own individual act of discrimination.[5] Such "opposition" does not fall within the protection of the Act.[6] A single unauthorized act of discrimination by a co-worker has never been held to justify "opposition" in the sense of protecting a protesting employee from employer discipline. Even a continuing course of racial harassment by a co-employee cannot be imputed to the employer unless the latter both knows of it and fails to take remedial action. *Howard v. National Cash Register Co.,* 388 F.Supp. 603 (S.D.Ohio 1975). Here, no evidence was presented to show that KCA or any of its supervisory personnel authorized Warrington's remark or approved of it, either before or after the incident, and Warrington was reprimanded by KCA on the day the incident occurred.

■ Silver argues that the district court erred in applying the same legal standard to the phrase "unlawful employment practice" under both §§ 703(a)(1) and 704(a). She maintains that the mere similarity of language used in the two sections does not mandate application of the same standard to both. However, the two sections present more than a mere similarity of language. By requiring that an employee's opposition, to be protected, must be to "any practice made an unlawful employment practice by this subchapter," § 704(a) actually incorporates § 703(a)(1) by reference. Confusion may arise from the fact that § 704 defines one unlawful employment practice (discriminating against an employee, *e. g.,* by discharging him) by reference to another (the practice which the discharged employee opposed). Since §§ 703 and 704 define two distinct unlawful employment practices, the former relating to discrimination directly on the ground of (inter alia) race and the latter relating to retaliatory discrimination, their standards necessarily do differ. Nevertheless, under the clear language of the "opposition" clause of § 704(a), a case of retaliation has not been made out unless the "retaliation" relates to the employee's opposition to a § 703 violation.

Silver cites several cases to support her proposition that a § 703(a)(1) "unlawful employment practice" differs from a § 704(a) "unlawful employment practice." *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998 (5th Cir. 1969); *EEOC v. Kallir, Philips, Ross, Inc.,* 401 F.Supp. 66 (S.D.N.Y.1975); *Bradford v. Sloan Paper Co.,* 383 F.Supp. 1157 (N.D.Ala.1974); *Francis v. American Tel. & Tel. Co.,* 55 F.R.D. 202 (D.D.C.1972). In all these cases, however, the plaintiff had filed a charge with a governmental agency prior to dismissal, and there was evidence that the employer dismissed the employee in retaliation for doing so. Silver's reliance on these cases, therefore, is misplaced. Language in *McDonnell Douglas Corp. v. Green, supra,* on which Silver relies, does not contradict this conclusion. Nothing in *McDonnell Douglas* teaches us to look elsewhere than to § 703(a)(1) for a definition of the unlawful employment practice for opposing which an employee may not be discharged.

■ The second clause of § 704(a) prohibits as an unlawful employment practice any discrimination against an employee "because" he has participated in any way in formal or informal proceedings "under this

5. As a corollary to this distinction, it may be noted that the firing was not actually "retaliatory," since even if we accept Silver's factual allegations as true, the firing was based on her clash with a third party rather than with KCA, her employer.

6. This case is to be distinguished from the situation in *Novotny v. Great Amer. Sav. & Loan Ass'n,* No. 76–1580, slip op. at 40–44 (3d Cir. Aug. 7, 1978) (en banc) (also reported at 17 F.E.P.Cas. 1252, 1268–70), where it was held that an employee's opposition need not be manifested by formal charges or litigation under Title VII. In that case the opposition was to alleged actions and policy of the employer against equal employment opportunity to women and that opposition was expressed by the employee to the employer.

subchapter." Silver would construe this language as protecting employees who file charges with an enforcement agency after being discharged, as well as before. She argues that otherwise, an employer can freely punish all opposition by its employees to discrimination simply by discharging a protestor before charges are filed. Such a result, Silver contends, would be anomalous in view of (1) Congress' broad remedial purpose in enacting Title VII, and (2) the correlative result of requiring employees to "rush off and file charges with the EEOC prior to their employer [discharging] them" in order to protect themselves.

The principal difficulty with Silver's argument is that it overlooks the plain language of the statute itself. The distinction between a charge filed prior to the discharge and one filed subsequently is not arbitrary line-drawing, as Silver portrays it. The issue addressed by this subsection is the employer's motivation, permissible or impermissible, in discharging the employee. Obviously, if a charge is not filed with the EEOC until after the discharge, the latter cannot be motivated by a desire to retaliate for the former. Indeed, the "anomaly" policy argument raised by Silver is countered by another, at least equally strong: If a discharge could be retroactively subjected to an unlawful employment practice charge simply by the employee's subsequent filing of a charge with the EEOC, such after-the-fact charges would become the rule, further inflating the workload of the agency and making its functioning impossible. The fact that Silver neither communicated with a government agency nor threatened to do so for three days after her discharge demonstrates that whatever the reason for the discharge, it was not "because of" her invocation of agency procedures.

### III.

KCA does not appeal from the district court's denial of attorneys' fees, but it does request costs and reasonable attorneys' fees on this appeal. The applicable

standard for the granting of attorneys' fees to a prevailing defendant in a Title VII appeal is set forth in *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir. 1974). Attorneys' fees may be awarded in the court's discretion; they are not automatic.[7] The strong policy considerations favoring an award of costs and attorneys' fees to a victorious plaintiff in a Title VII action do not apply in favor of a victorious defendant. Other factors to be considered include the good faith of the plaintiff in bringing the action or appeal, and the ability of the prevailing defendant "to pay its own way." *Van Hoomissen, supra*, at 1133. The court below denied the defendant attorneys' fees in the trial of this case, based on a finding that the plaintiff had acted in good faith in filing the charge and bringing the complaint. KCA does not dispute that Silver's appeal, too, was taken in good faith, and we so find. Consequently, each party shall bear its own attorneys' fees on this appeal, but the defendant is awarded all other costs of the appeal.

The judgment of the district court is AFFIRMED.

---

7. Section 706(k), 42 U.S.C. § 2000e–5(k), provides in relevant part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, oth-

er than the [EEOC] or the United States, a reasonable attorney's fee as part of the costs . . . .."