**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**CROWN ZELLERBACH CORPORATION, Zellerbach Paper Company, Defendants-Appellees,**

**Raymond B. Brown, Walter L. Cook, Thomas F. Gibbs, Herbert E. King, Sheddrick Charles Kinnebrew, Edgar G. Walker and Luther E. Washington, Intervenors-Appellants.**

Nos. 82–5455, 82–5570.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1983.

Decided Aug. 2, 1983.

Justine S. Lisser, Atty., E.E.O.C., Washington, D.C., for plaintiff-appellant.

William C. Bottger, Jr., Latham & Watkins, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER and NELSON, Circuit Judges, and SOLOMON,* District Judge.

FLETCHER, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) and intervenors appeal from a ruling of the district court that four-month disciplinary suspensions imposed on each of the intervenors did not violate the opposition clause of Title VII, 42 U.S.C. § 2000e–3(a). The issue presented is whether black employees' conduct in writing a letter to the local school board, a customer of the employer, protesting an affirmative action award to the employer, is a permissible form of protected opposition to discriminatory practices. We conclude that such conduct is protected, and reverse.

## I

## FACTS

1. *Background.*

The essential facts are undisputed and were stipulated for purposes of the proceed-

---

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

ing below. For a number of years during the late 1960's and early 1970's, black employees working in a Los Angeles, California warehouse of the Zellerbach Paper Company expressed discontent concerning certain employment practices prevalent in the warehouse. Specifically, the black employees objected to what they perceived as a practice by Burl McColm, the Personnel Manager at the warehouse, of placing blacks in jobs involving the highest level of physical strain and the longest wait before promotion. The black employees felt that the extremely low percentage of blacks holding supervisory positions in the Los Angeles facility was evidence that McColm and other Zellerbach employees discriminated against blacks.

To remedy what they considered wrongful racial discrimination, black employees at the warehouse filed complaints with the EEOC and engaged in several other protest measures. They formed an organization titled "The Concerned Black Zellerbach Employees." They wrote letters to elected officials at the federal, state, and local levels. On June 15, 1976, 16 black warehouse employees sent a letter to C.R. Dahl, the board chairman of Crown Zellerbach Corporation, Zellerbach's parent, complaining of discrimination against blacks and inadequate affirmative action in the warehouse. As a result of this letter, Crown Zellerbach officials proposed a meeting with the authors to discuss the complaints. All but one of the letter signers refused to attend this meeting, however, because Crown Zellerbach management would not agree to permit the presence of an outside observer.

Later, some of the black employees picketed the campaign headquarters of Los Angeles Mayor Tom Bradley to protest his failure to investigate conditions at the warehouse. On another occasion, black employees picketed the warehouse itself.

In 1976, black Zellerbach employees lodged an administrative complaint with the Office of Federal Contract Compliance Programs, charging that Zellerbach practices did not conform to Executive Order 11246, which requires federal contractors to observe equal employment opportunity guidelines. The General Services Administration investigated this charge. Ultimately it negotiated with Zellerbach a "conciliation agreement" that contained several "findings" that Zellerbach practices were discriminatory in certain respects. Later, this conciliation agreement was superseded by a second conciliation agreement, which again identified certain "deficiencies" and provided that Zellerbach would take corrective action.

The EEOC never sued on any of the unlawful practice charges filed by black Zellerbach employees, except for the one involved in the present action. In December 1978, black Zellerbach employees instituted a class suit alleging racial discrimination. Sometime after the incident that gave rise to the present case, the suit was dismissed on its merits.

## 2. The Present Controversy.

In late June or early July of 1979, an item appeared in the *Union Pacific Press,* the house organ newspaper at the Zellerbach warehouse, describing "Project Early Bird." "Project Early Bird" was a program funded by Zellerbach designed to provide special career guidance for sixth-grade students in the predominantly Hispanic school near the Los Angeles warehouse. After describing some of the activities undertaken in the course of "Project Early Bird," the article stated that "on June 11, 1979, Burl McColm, representing Zellerbach, will receive an award from the Los Angeles Unified School District." The Los Angeles Unified School District is composed of elected officials. As virtually all Zellerbach employees knew, it ranks in the top 10% by dollar value of purchases among Zellerbach's customers.

The intervenor-appellants are seven black employees in the Los Angeles Zellerbach warehouse. When they read the *Express* item, they were extremely displeased because they believed that Zellerbach, and particularly McColm, did not merit what the employees perceived as an award for affirmative action. The seven appellants

together composed a letter addressed to the "Members of the L.A. Unified School District" that read as follows:

> The black employees of Zellerbach Paper Company and members of the Concerned Black Employees of Zellerbach were shocked and dismayed at the award given to Burl McColm.
>
> Burl McColm has been the Standard Bearer of the bigoted position of racism at Zellerbach Paper Company.
>
> The 1st (first) charges were filed against Zellerbach Paper Company in 1969 and additional charges were filed throughout the seventies.
>
> The Equal Employment Opportunities Commission substantiated many of the charges and the emergent case is now pending litigation (Case No. CV 78–4803–LTL–(SX).
>
> We take issue with the awards being given to these kinds of people when most of us have been fighting racism and discrimination at Zellerbach for the last ten years and some even longer.
>
> We would like an immediate reply from you explaining why you failed to look at Zellerbach's Total Affirmative Action Picture.

Copies of the letter were delivered to officials at Crown Zellerbach as well as the Los Angeles School District. Crown executives were disturbed by the letter because they feared that the school district, a significant customer, might respond adversely to allegations that a supplier practiced racial discrimination. They therefore resolved to fire each of the seven employees who had signed the letter. The appellants were notified of their termination, most on August 3, and one on August 6. It has never been disputed that the sole reason for the discharge was the letter.

Pursuant to the terms of a collective bargaining agreement between Zellerbach and the United Paperworkers International Union, Local 1400, the appellants filed grievances. Each sought reinstatement and full backpay, benefits and seniority on the ground that the dismissal was without "just cause" as required by the agreement. An arbitrator ruled that the employees had been "disloyal" to Zellerbach, the employer, but that the disloyalty did not amount to "just and sufficient cause" for discharge. The arbitrator ordered the employees reinstated immediately, and awarded them backpay starting from a date four months after the discharge. This decision effectively reduced the dismissal sanction to a four-month disciplinary suspension without pay.

In addition to the labor grievance, the appellants filed a charge with the EEOC. They contended that Crown Zellerbach's decision to fire them for writing the letter constituted retaliation for opposition to a discriminatory employment practice, prohibited by section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). The EEOC elected to pursue the charge, and filed this action in district court. The seven discharged employees intervened.

On the basis of the stipulated facts set forth above, the district court resolved the statutory issue in favor of the defendant Zellerbach. The court reasoned that the employee letter did constitute good faith "opposition" to employment practices perceived as discriminatory. However, it concluded that the opposition was not protected under section 704(a) because the opposition was expressed in a disloyal and therefore unreasonable form.

## II

## DISCUSSION

■ Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1976), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." To determine whether an employer has discriminated against its employee in violation of this provision, a court must assess the proof of discriminatory treatment claims using the three-stage procedure set forth by the Supreme Court in *Texas Department of Community Affairs v.*

*Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See, e.g., Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1136 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

First, the plaintiff has the burden of proving a prima facie case of discrimination based on opposition to an unlawful employment practice. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. The plaintiff meets this burden if he shows that (1) he has engaged in statutorily protected expression; (2) he has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action.[1] *Payne,* 654 F.2d at 1136.

Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). The language of section 704(a) does not indicate what might constitute a legitimate and nondiscriminatory reason for disciplining an employee for engaging in statutorily protected expression. Courts, however, have held that certain forms of "opposition" conduct, including illegal acts or unreasonably hostile or aggressive conduct, may provide a legitimate, independent and nondiscriminatory basis for sanctions. *Payne,* 654 F.2d at 1142; *see McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. at 1824 (illegal conduct); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 233–34 (1st Cir.1976) (hostile, disruptive conduct). *See also Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978).

Finally, if the defendant carries its burden of articulating a proper reason for taking disciplinary action against the plaintiff, the plaintiff has an opportunity to prove by a preponderance of the evidence that the stated reason was not the defendant's true reason for acting, but a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825).

### 1. *Prima Facie Case.*

Turning first to the question whether the appellants successfully established a prima facie case that Zellerbach violated section 704(a)'s opposition clause, we find that two of the three necessary elements are admitted by Zellerbach. The four-month disciplinary suspensions that continued in effect following the arbitrator's decision constituted "adverse employment actions" against each appellant. The requisite causal link is also present, since Zellerbach admits the letter caused the firings. The only remaining question is whether the letter was statutorily protected expression.

We find this issue to present the most troublesome aspect of the case. The letter does not fit the classic mold of protected "opposition to an unlawful employment practice" for several reasons. First, the letter did not protest any specific instance or instances of unlawful discrimination, but rather stated only that "racism" and "discrimination" were prevalent at the Zellerbach Paper Company. Second, the letter was primarily worded as a protest against the presentation of the Early Bird award to Burl McColm, a Zellerbach employee, and only secondarily as an objection to Zellerbach's policies themselves. Third, the letter was directed to an outside party rather than to a Zellerbach decisionmaker or government official entrusted with responsibility for enforcing the equal opportunity laws. In spite of these unusual aspects of the appellants' opposition conduct, the dis-

---

1. Although the issue is not presented here, our circuit's test to establish the causal link for purposes of making out a prima facie case may differ from that articulated by the Eleventh Circuit in *Payne.* We have stated that the prima facie case is established if the employee shows that he was discharged "following protected activities of which the employer was aware." *Aguirre v. Chula Vista Sanitary Service,* 542 F.2d 779, 781 (9th Cir.1976).

trict court concluded that the letter did fall within the scope of the statutory opposition clause protection under all of the circumstances. We agree.

■ The employee's statement cannot be "opposed to an unlawful employment practice" unless it refers to *some* practice by the employer that is allegedly unlawful. It is not necessary, however, that the practice be demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a "reasonable belief" that the employer has engaged in an unlawful employment practice.[2] *Sias v. City Demonstration Agency,* 588 F.2d 692, 695–96 (9th Cir.1978); *see also McDonnell Douglas,* 411 U.S. at 796, 93 S.Ct. at 1821 (dictum) (section 704(a) "forbids discrimination against ... employees for attempting to protest or correct *allegedly* discriminatory conditions of employment" (emphasis added)). But a simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an "unlawful employment practice."

In this case the assertedly unlawful employment practices protested by the appellants could be discerned from the context of the letter. The letter specifically mentioned the history of unlawful employment practice charges filed against Zellerbach by black employees pursuant to Title VII. It stressed that Zellerbach had engaged in a continuing series of unlawful discriminatory employment practices, and that, if the school district officials had consulted the entire record, they would have discovered the persistent complaints about these practices.

Courts have not imposed a rigorous requirement of specificity in determining whether an act constitutes "opposition" for purposes of section 704(a). For example, the court in *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137 (5th Cir.1981), held that an employee who picketed his employer in order to protest the general failure of the employer to provide adequate employment opportunities for blacks in its retail stores was protected by the opposition clause of section 704(a). The court reached this result even though it acknowledged that the picketing was also intended to protest the allegedly discriminatory treatment of black customers by the store. *Id.* at 1137 n. 7. We conclude that the references in the appellants' letter to the complaints lodged against Zellerbach, when considered in light of the particularized nature of the complaints, were sufficiently specific to constitute opposition to "unlawful employment practices."

The appellants' letter was principally worded as a protest against the presentation of an affirmative action award to Burl McColm, whom the appellants described as "the Standard Bearer of the bigoted position of racism at Zellerbach Paper Company." Zellerbach cites our decision in *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir.1978), as authority for the proposition that opposition to McColm's personal biases or racial slurs could not constitute "opposition to an unlawful employment practice" protected under section 704(a).

In *Silver,* the plaintiff had been discharged after she objected when her superior, Warrington, referred to a black employee as a "jungle bunny." 586 F.2d at 140. This court held that the plaintiff's opposition to "a racially discriminatory act of a co-worker" could serve as the basis for discharging the plaintiff without violating the opposition clause of section 704(a). *Id.* at 140–41. *Silver,* however, is distinguishable. McColm, as the personnel manager at the Los Angeles Zellerbach warehouse, was largely responsible for Zellerbach's employment practices within the warehouse. As such, he occupied a position fundamentally different from Warrington, who was an ordinary employee in a drafting studio. The *Silver* court was careful to observe that

---

**2.** For this reason, it is irrelevant to the outcome of this case that the appellants' unlawful employment practice charges lodged against Zellerbach were ultimately dismissed on their merits. That the employees' belief that Zellerbach had practiced discrimination was "reasonable" is sufficiently shown by the fact that the GSA's investigation resulted in findings that Zellerbach practices were "discriminatory" and "deficient" in certain respects.

"Warrington's remark cannot be imputed to [the employer] under an agency theory." *Id.* at 141. McColm, by contrast, *was* an agent appointed by Zellerbach for purposes of employment matters. Consequently, the appellants' objections to discriminatory practices by McColm were effectively objections to "unlawful employment practices" by Zellerbach. *See id.* at 141 n. 4.

Zellerbach argues strenuously that the appellants' letter, whatever its content, cannot constitute protected opposition because it was delivered to the school district, an outside party, rather than a Zellerbach official. We find no persuasive authority to support the proffered position. Our court has held that an employee who complains to a government official concerning race discrimination by his employer is protected by the opposition clause of section 704(a). *Sias v. City Demonstration Agency,* 588 F.2d 692, 694–96 (9th Cir.1978); *see also Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 968–69 (3d Cir.1978). Zellerbach, however, contends that *Sias* and *Hicks* are inapposite because the government officials contacted in each case were responsible for administering grants distributed to the employer. Where the recipient of the "opposition" message is an ordinary public official or a customer of the employer, Zellerbach maintains, the expression is not statutory opposition. But *Payne* is to the contrary.

In that case, the plaintiff's opposition to discriminatory practices was expressed by participation in a boycott and in picketing designed to convey a message to customers and the general public as well as the employer. *Id.* at 1135. The court held that when the plaintiff showed that he had not been rehired because of his participation in the boycott and picketing, he successfully demonstrated a prima facie case of discrimination prohibited by the opposition clause of section 704(a) under the *McDonnell Douglas v. Green* test. *Id.* at 1141.

We accordingly conclude that the letter from the appellants to the Los Angeles Unified School District was statutorily protected expression of "opposition" and that appellants therefore established a pri-

ma facie case that Zellerbach's disciplinary actions against them violated section 704(a).

### 2. *Reasonableness of the Opposition.*

Despite its conclusion that the letter constituted "opposition" within the meaning of section 704(a), the district court upheld the disciplinary sanctions because it found the act of sending the letter was disloyal to the employer, and thus an unreasonable form of opposition that supplied a legitimate basis for discharge under the second part of the *McDonnell Douglas—Burdine* formula. *See Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230–34 (1st Cir.1976).

It is true that the court in *Hochstadt* referred frequently to the "disloyal" behavior of the plaintiff employee. In ruling that the employee's discharge did not violate section 704(a), the First Circuit agreed with the district court in that case that

[a]lthough Dr. Hochstadt's actions were associated with a protected objective, . . . they constituted serious acts of disloyalty, which damaged the employer's interests and were of an excessive nature which was not warranted as a response to any conduct of the Foundation. Accordingly, . . . the discharge had a sufficient and nondiscriminatory basis.

*Id.* at 234. Zellerbach points to this statement to support its contention that sanctions are not discriminatory if imposed in response to conduct that is "disloyal."

Almost every form of "opposition to an unlawful employment practice" is in some sense "disloyal" to the employer, since it entails a disagreement with the employer's views and a challenge to the employer's policies. Otherwise the conduct would not be "opposition." If discharge or other disciplinary sanctions may be imposed based simply on "disloyal" conduct, it is difficult to see what opposition would remain protected under section 704(a).

But the facts in *Hochstadt* display much more than simple disloyalty by the plaintiff. Dr. Hochstadt's protest actions resulted in poor work performance by her and also in diminished performance and reduced mo-

rale in other employees who worked with her.[3] This was the true basis of the *Hochstadt* decision. The second part of the *McDonnell Douglas—Burdine* test was satisfied, because Dr. Hochstadt would have been fired based on her employment performance alone even had she not opposed the institute's employment practices. As the *Hochstadt* court reasoned, "[a]n employer has a legitimate interest in seeing that its employees perform their work well."[4] 545 F.2d at 233.

Cases following *Hochstadt* have stressed interference with job performance in determining whether opposition is "unreasonable" and provides a legitimate basis for discipline. The Fifth Circuit aptly summarized the doctrine in *Rosser v. Laborers' International Union of North America,* 616 F.2d 221, 223 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980).

> Even though opposition to an unlawful employment practice is protected, such protection is not absolute. There may arise instances where the employee's con-

duct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered by § 704(a).

In each of the cases that deny a section 704(a) opposition claim on the basis of the *Hochstadt* rule, the plaintiff's protest activities significantly disrupted the workplace and sometimes directly hindered his or her job performance.[5] In the present case, by contrast, the appellants' action in sending the letter to the school district had absolutely no effect upon the appellants' job performance or upon the workplace environment.

Zellerbach maintains that despite the lack of any connection between the appellants' letter and on-the-job performance, the letter was unreasonable opposition because it threatened to disrupt relations between Zellerbach and the school district, a major customer. But in *Sias v. City Demonstration Agency,* 588 F.2d 692, 695–96 (9th Cir.1978),

**3.** In *Hochstadt,* the plaintiff was a woman doctor employed by a biomedical research institute. Dr. Hochstadt believed that the affirmative action program at the institute was inadequate, and lodged numerous complaints and grievances concerning the situation. 545 F.2d at 227. She also undertook a lengthy series of measures designed, in her view, to oppose the illegal policies.

The *Hochstadt* opinion recites at length the numerous ways Dr. Hochstadt's activities disrupted the work of the institute. Her complaints interfered with meetings and disrupted discussions. *Id.* She circulated rumors that the institute was about to lose its federal funding, which required the institute on three occasions to invite HEW officials to reassure institute scientists that their funding was not endangered. *Id.* at 228. She allowed a local reporter to examine files containing confidential salary information. *Id.* She incurred $950 in charges on the institute's telephones for personal calls to her lawyer and others. *Id.* She continually quarreled with her subordinates, colleagues, and superiors at the institute. *Id.* When Dr. Hochstadt was discharged, the explanation to her was that "your continuing lack of cooperation, disruptive influence, hostility, and threats toward the Institution and its Directors have made such termination necessary." *Id.*

**4.** This court, when citing *Hochstadt,* has stated the holding of the case to be that in order to

receive protection under section 704(a), a means of opposition must be "reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978).

**5.** *See, e.g., Rosser v. Laborers' Int'l Union of North Am.,* 616 F.2d 221, 223–24 (5th Cir.) (employee's hostility to supervisor rendered her ineffective in performance of duties), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980); *Jefferies v. Harris Co. Comm. Action Assoc.,* 615 F.2d 1025, 1036 (5th Cir.1980) (employee's surreptitious copying of confidential documents interfered with employer's interest in maintaining confidentiality of employee records); *Pendleton v. Rumsfeld,* 628 F.2d 102, 107–08 (D.C.Cir.1980) (participation in disruptive, noisy demonstration during work hours rendered EEO officers unfit to perform their duties); *Gonzalez v. Bolger,* 486 F.Supp. 595, 602 (D.D.C.1980) (employee's militant demands for paid time to prepare EEO complaints on behalf of himself and others, and other disruptive behavior, exceeded tolerable limits of protected conduct); *Women Employed v. Rinella & Rinella,* 468 F.Supp. 1123, 1126 (N.D.Ill. 1979) (employee did not act in good faith in her opposition and engaged in loud and insubordinate conduct in the firm's working area).

this court upheld the section 704(a) claim of a Mexican-American discharged for writing a letter to the Regional Administrator of HUD complaining of unlawful hiring practices by his employer, even though the employer received grant money from HUD. The Third Circuit reached a similar result in *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 969 (3d Cir.1978). The court in *Hicks* explained that "[b]y addressing a complaint to HUD, the source of the project funding, [the plaintiff] was in the process of opposing allegedly discriminatory practices by his employer, and was protected by the Act. *See generally [Hochstadt]."* In light of these authorities, Zellerbach's contention that the appellants' letter was unreasonable opposition because it threatened Zellerbach with economic harm is untenable.

Zellerbach also cites several cases decided under the "opposition clause" of the National Labor Relations Act, 29 U.S.C. § 157, to show that interference with customer relations can provide a proper cause for disciplining an employee. We are not convinced that the standard of adjudication under the opposition clause of Title VII is the same as the standard under the NLRA. We need not decide the question, however, because the facts of the cited cases are far different from those in the present case. Appellants' letter did not reveal any information the confidentiality of which was essential to the employer's business interests. *Cf. NLRB v. Knuth Brothers, Inc.,* 537 F.2d 950, 955–57 (7th Cir.1976). Nor was the letter a "sharp, public, disparaging attack upon the quality of the company's product and its business policies" unrelated to the substantive grounds underlying the opposition. *Cf. NLRB v. Local 1229, IBEW (Jefferson Broadcasting),* 346 U.S. 464, 471, 74 S.Ct. 172, 176, 98 L.Ed. 195 (1953). Instead, the sole point of the letter was to stress that Zellerbach and its management had compiled a less-than-perfect affirmative action record. As a message to a body of elected officials, the letter was a perfectly appropriate means of expressing discontent concerning the decision to present Zellerbach with an affirmative action award. We cannot conclude that Zellerbach's decision to discipline the appellants would have been

reached if the letter had not expressed opposition to Zellerbach's employment policies and practices. Hence Zellerbach did not meet its rebuttal burden of articulating legitimate and nondiscriminatory reasons for the disciplinary action. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The appellants were therefore entitled as a matter of law to prevail based on their initial showing. *Id.* at 254, 101 S.Ct. at 1094; *Gerdom v. Continental Airlines, Inc.,* 692 F.2d 602, 609 (9th Cir.1982) (en banc).

### III

### CONCLUSION

The appellants made a prima facie showing that the adverse employment actions against them violated the opposition clause of section 704(a) of the Civil Rights Act. Under the correct legal standard, as applied to the stipulated facts, Zellerbach failed to articulate a legitimate, nondiscriminatory reason for its actions. The judgment of the district court is REVERSED and the case REMANDED for a determination of the precise relief to which the appellants are entitled.