## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SHERNIECE R. MCGREGOR,
          Appellant,

          v.

DEPARTMENT OF THE ARMY,
          Agency.

DOCKET NUMBER
CH-0752-18-0592-I-1

DATE: November 25, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

C. Mike Moulton, Elizabethtown, Kentucky, for the appellant.

Whitney Alfred Campbell and Timothy Harner, Fort Knox, Kentucky, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained her removal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

¶2     The appellant was a Supervisory Management Analyst with the U.S. Army Human Resources Command until the agency removed her, effective September 6, 2018, based on charges of conduct unbecoming and lack of candor. Initial Appeal File (IAF), Tab 8 at 13-14, 22.  The conduct unbecoming charge was supported by five specifications in which the agency alleged that on various occasions the appellant failed to follow her supervisor's directives, refused to meet with her supervisor, and acted unprofessionally and in a hostile manner.  *Id.* at 13.  The lack of candor charge was supported by five specifications in which the agency alleged that the appellant made various untruthful statements that her supervisor had acted inappropriately toward her and displayed racist behavior at work.  *Id.* at 14.

¶3     The appellant filed a Board appeal challenging her removal and raising affirmative defenses of harmful procedural error, discrimination based on her race and color, and retaliation for equal employment opportunity (EEO) activity.  IAF, Tab 1 at 8, Tab 10.  After a hearing, the administrative judge issued an initial decision sustaining the appellant's removal and finding that the appellant failed to prove her affirmative defenses.[2]  IAF, Tab 49, Initial Decision (ID) at 1-37.  The administrative judge further found that there was a nexus between the charges and the efficiency of the service and that the penalty was within the tolerable limits of reasonableness.  ID at 37-41.

¶4     The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response.  PFR File, Tabs 3-4.

---

[2]  The administrative judge sustained specifications 2-5 of the conduct unbecoming charge and specifications 1-4 of the lack of candor charge.  ID at 19-33.

**ANALYSIS**

The administrative judge did not err in her credibility determinations.

¶5     The context for this appeal largely concerns the appellant's relationship with her supervisor. According to the appellant, that relationship was marked by her supervisor's harassment and hostility, born at least in part out of his race, color, and sex-based animus towards her. The agency denies that any such hostility, harassment, or animus existed. Considering the hearing testimony and written statements of the appellant and 15 other witnesses, the administrative judge found the agency's account to be more accurate and determined that the appellant's reports of harassment and discrimination were false. ID at 19. In particular, she found that the evidence showed that the 15 individuals who either testified or were interviewed and submitted sworn statements during the agency's internal investigation all said essentially the same thing—that the appellant's supervisor did not create a toxic or hostile work environment, did not single out the appellant or treat her differently, and he was not a racist, sexist, liar, or controlling micromanager as the appellant alleged. ID at 16-17. Rather, the witnesses almost universally praised the appellant's supervisor as a leader and manager. ID at 18. In so finding, the administrative judge credited the testimony of the appellant's coworkers and supervisor, which she found to be direct and straightforward as well as internally consistent and consistent with the documentary evidence. ID at 17. In contrast, she found the appellant to be defensive, largely unreliable, and dishonest and that her testimony aligned with the documentary evidence and testimony suggesting that the appellant considered herself beyond reproach and, when confronted with shortcomings, she would lash out rather than take constructive criticism. ID at 18-19.

¶6     On review, the appellant argues that the administrative judge erred in her credibility determinations by ignoring facts and improperly considering the appellant's supervisor's demeanor. PFR File, Tab 1 at 13-16. She further

contends that the administrative judge erred by failing to consider that the appellant's coworkers lacked the opportunity and capacity to observe her alleged mistreatment by her supervisor as well as by failing to consider that they may have been biased because they were still employed by the agency. *Id.* at 16-17. We find such arguments unavailing. A witness's demeanor is a relevant factor for an administrative judge to consider in making credibility determinations. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Additionally, the administrative judge properly considered the testimony of the appellant's coworkers to the extent that they witnessed the relevant incidents. ID at 5, 7, 9, 22-24, 29, 31. Finally, the administrative judge found that the appellant's coworkers lacked a motive to lie about their interactions with the appellant or her supervisor because, in light of the totality of the record and consistency of their testimony, it would be implausible to find that they collectively conspired against the appellant to refute her allegations while under oath in writing and during their testimony. ID at 17, 32-33. Thus, we find that the appellant's arguments on review do not provide a sufficiently sound reason to overturn the administrative judge's credibility findings. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

The charge of conduct unbecoming is sustained.

¶7    In specification 2, the agency charged the appellant with refusing to follow her supervisor's May 9, 2018 directive that she personally write an executive summary and task timeline and instead delegating the task to another employee. IAF, Tab 8 at 13. The administrative judge found that the agency proved that the appellant was directed to correct the executive summary, which was originally

drafted by the appellant's subordinate in the appellant's absence. ID at 21. She further found that the appellant's supervisor's email and testimony made clear that he had instructed the appellant to do the work, not delegate it to her subordinates. ID at 4-5, 21. On review, the appellant argues that it was improper for her supervisor to ask her to personally prepare the executive summary instead of delegating it and that his action in doing so shows how he singled her out. PFR File, Tab 1 at 17. However, the administrative judge considered and rejected such an argument, finding that it failed to account for the circumstances under which the record revealed that the appellant's subordinate had created confusion such that it was reasonable for the appellant's supervisor to request that the appellant rewrite it. ID at 21. The appellant also argues that her supervisor's email regarding the executive summary did not use the word "personally" and that she later told her supervisor that she wrote the summary during a meeting on May 16, 2018. PFR File, Tab 1 at 17-18. These arguments, however, do not establish any error in the administrative judge's finding that the May 9, 2018 email chain between the appellant and her supervisor showed that the appellant was instructed to write the summary and that she failed to confirm that she personally produced the summary at that time. ID at 4-5, 21-22.

¶8    In specification 3, the agency alleged that on May 9, 2018, the appellant refused her supervisor's directive that she meet with him regarding drafting an executive summary, instead loudly proclaiming that any meeting between them would be in the Chief of Staff's office. IAF, Tab 8 at 13. The administrative judge found that the agency proved that the appellant's supervisor requested a meeting with her, which the appellant refused, and instead went to the Chief of Staff and made unfounded allegations against her supervisor. ID at 22. On review, the appellant asserts that her actions did not amount to conduct unbecoming a Federal employee, but rather were reasonable in light of her supervisor's harassment over the previous 3 months. PFR File, Tab 1 at 18. This argument, however, amounts to disagreement with the administrative judge's

findings that the appellant's claims of harassment were false and not supported by the record.[3] ID at 22; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (stating that the Board will give due deference to the credibility findings of the administrative judge and will not grant a petition for review based on a party's mere disagreement with those findings); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶9        In specification 4, the agency alleged that, during a meeting with her supervisor and the Deputy Chief of Staff on May 16, 2018, the appellant pointed her finger at her supervisor, raised her voice, and stated that he was a liar, she didn't trust him, wanted to move, and couldn't work for him, before storming out of the meeting. IAF, Tab 8 at 13. The administrative judge found that the evidence, including testimony of the appellant's supervisor and the Deputy Chief of Staff as well as the appellant's own secretly made recording of the meeting, established that the appellant engaged in the charged conduct. ID at 23. The appellant's argument on review that her conduct was proper in light of her supervisor's harassment constitutes mere disagreement with the administrative judge's demeanor-based credibility findings and provides no basis to disturb the initial decision. *See Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359.

¶10       In specification 5, the agency alleged that the appellant asked improper questions in a hostile manner during a briefing to the Commanding General on the results of a manpower study. IAF, Tab 8 at 13. The administrative judge found that the appellant's questions were designed to embarrass her supervisor in front of the Commanding General and that the timing of her questions showed a lack of judgment because she should have raised such questions well before the final briefing instead of withholding her concerns until the spotlight was on her team. ID at 24. On review, the appellant reiterates that G.H., one of her subordinates

---

[3] The undercurrent of the appellant's case is that her supervisor was hostile, demeaning, and bigoted. PFR File, Tab 1 at 13-16

who attended the briefing, testified that he did not perceive the appellant's questions as being designed to embarrass her supervisor. PFR File, Tab 1 at 17. However, the administrative judge considered this testimony and found that it did not align with the testimony of several other coworkers who attended the briefing and felt that the appellant's questions were improper. ID at 24.

¶11 Because the agency proved specifications 2 through 5, the charge is sustained. When more than one event or factual specification is set out to support a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).

The charge of lack of candor is not sustained.

¶12 The four specifications of this charge all pertain to statements that the appellant made to the Chief of Staff about her supervisor's conduct, as well as statements that the appellant made during the ensuing investigation. IAF, Tab 8 at 14. Regardless of whether the appellant lacked candor in making these statements, this charge cannot be sustained because, as explained more fully below, it concerns protected activity for which the appellant may not be disciplined.

The appellant proved that her affirmative defense of retaliation for equal employment opportunity activity was a motivating factor in her removal.

¶13 The administrative judge found that the appellant failed to show that her EEO activity was a motivating factor in her removal because the evidence established that the appellant's supervisor did not act improperly and did not engage in the behavior reported by the appellant. ID at 36-37. On review, the appellant argues that she has met her burden because the lack of candor charge derives from her protected reports of discrimination and harassment, originally made to the Chief of Staff, and later memorialized in a sworn statement as part of the agency's internal investigation into her claims. PFR File, Tab 1 at 24-25. We agree with the appellant.

¶14     In her initial complaint to the Chief of Staff, and during the ensuing investigation, the appellant alleged that her supervisor engaged in discriminatory and harassing behavior against her based on her race, color, and sex.  IAF, Tab 8 at 201-09, Tab 10 at 8-10.  Under Title VII of the Civil Rights Act of 1964, discrimination on these bases is prohibited in the Federal workplace.  42 U.S.C. § 2000e-16(a).  Federal employees are also protected from retaliation for engaging in activity protected under Title VII.  As relevant here, to prove an affirmative defense of retaliation for Title VII EEO activity, an appellant must show that she engaged in such activity and that the protected activity was at least a motivating factor in the agency's action or decision.  *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22, 30.  Under Title VII's antiretaliation provision, it is unlawful for an employer to discriminate against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

¶15     There are two kinds of activity protected under this provision—opposition activity and participation activity.  *Johnson v. Frost*, EEOC Appeal No. 11980023, 2001 WL 1353704, at *6 (June 28, 2001).  The participation clause applies when the employee has participated in "the machinery set up by Title VII to enforce its provisions."  *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978).  The opposition clause is more general and applies to virtually any opposition to what an employee perceives to be a discriminatory practice by her employer, including opposition accomplished outside of the Title VII procedural framework.  *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276-78 (2009).  Participation activity enjoys broader protection than does opposition activity; the participation clause protects even false and malicious charges of discrimination, whereas the opposition clause protects only reasonable, good faith allegations of discrimination.  *Wyatt v. City of Boston*, 35 F.3d 13, 15

(1st Cir. 1994); Equal Employment Opportunity Commission (EEOC) Enforcement Guidance on Retaliation and Related Issues, § IIA (Aug. 25, 2016). Because the appellant's reports of discrimination and harassment were not made reasonably and in good faith, they would be protected only if they were covered under the participation clause, i.e., made within the context of an "investigation, proceeding, or hearing under [42 U.S.C, chapter 21, subchapter VI]." 42 U.S.C. § 2000e-3(a).

¶16    There is no evidence that the appellant ever filed an EEO complaint—formal or informal—spoke with an EEO counselor, or otherwise took any steps to engage in the processes described in 29 C.F.R. §§ 1614.105-.110. Instead, the record shows that the initial complaint and subsequent proceedings took place within the context of the agency's Anti-Harassment Policy Implementation Procedures. IAF, Tab 8 at 60; Army Regulation 690-12, appendix D (Jan. 22, 2017). These anti-harassment procedures were promulgated in accordance with the EEOC's Management Directive (MD) 715 § II.C (Oct. 1, 2003), *available at* https://www.eeoc.gov/federal-sector/management-directive/section-717-title-vii, which requires each Federal agency to develop a comprehensive anti-harassment policy to prevent and address harassment on all protected bases. *See* EEOC, Instructions to Federal Agencies for MD-715 Section I The Model EEO Program § II.B.1, https://www.eeoc.gov/federal-sector/management-directive/instructions-federal-agencies-md-715-section-i-model-eeo; *see generally Rosamaria F. v. Department of the Navy*, EEOC Appeal No. 0120181068, 2020 WL 949668 at *6-*8 (Feb. 14, 2020) (explaining the substantive requirements for anti-harassment policies). The EEOC's authority to issue MD 715 derives from 42 U.S.C. § 2000e-16(b), which authorizes it to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." For these reasons, we find that the statements at issue were made within the context of an investigation or proceeding under 42 U.S.C, chapter 21, subchapter VI, and are therefore protected under the participation

clause. As such, the appellant's statements to the Chief of Staff and to the agency investigator constitute protected activity regardless of their veracity. *See Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007-08 (5th Cir. 1969); *Jazmine F. v. Department of Defense*, EEOC Petition No. 0320170007, 2023 WL 4653604, at *6-*7 (July 5, 2023); EEOC Enforcement Guidance on Retaliation and Related Issues, Notice 915.004, 2016 WL 4688886, at *5-*7 (Aug. 25, 2016)

¶17    The record also shows that this protected activity was at least a motivating factor in the appellant's removal. The proposal and decision documents themselves are undisputed, direct evidence that the appellant's removal was based, at least in part, on statements she made during the anti-harassment proceedings. IAF, Tab 8 at 14, 22. Under these circumstances, the agency could not plausibly argue that the appellant's removal was not motivated by retaliation.

¶18    Nevertheless, the appellant's removal was not based on prohibited retaliation alone (as under the lack of candor charge) but was also based on legitimate, nondiscriminatory, nonretaliatory reasons (as under the conduct unbecoming charge). The administrative judge, at least, considered lack of candor to be the more serious of the two charges: "The lack of candor charge alone warrants removal, and the remaining charge only bolsters the agency's decision." ID at 40. However, when asked at the hearing whether she found any certain specifications to be particularly serious, the deciding official identified specifications from both charges and further testified that she would have sustained the removal based on either charge standing alone. IAF, Tab 31-1, Hearing Recording, Day 1, Track 1 at 16:55 (testimony of the deciding official). We cannot determine on the existing record whether the agency would have removed the appellant even in the absence of her protected activity, i.e., based on the conduct unbecoming charge alone. Yet the question of causation must be answered before the Board reaches a final disposition because the appellant will be entitled to full relief under the statute only if she proves that retaliation was a but-for cause of her removal. *See Pridgen*, 2022 MSPB 31, ¶ 22. Under the

particular circumstances of this case, we find it appropriate to remand the appeal to the regional office for further adjudication of the appellant's affirmative defense.[4]

¶19    We further observe that the appellant's affirmative defense is intertwined with the issue of penalty. When the Board sustains fewer than all of the agency's charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty as long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). Therefore, if the administrative judge does not find that the appellant proved but-for causation, she should still determine whether the penalty of removal exceeds the tolerable limits of reasonableness based on the sustained specifications alone.

## ORDER

¶20    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order. On remand, the administrative judge shall allow the parties to file supplemental briefing on whether the appellant's protected activity was a but-for cause of her removal, or whether the agency would have taken the same action based on the conduct unbecoming charge alone. The administrative judge shall also allow the parties to file supplemental briefing on the issue of penalty. If appropriate, the administrative judge shall allow the parties to proffer additional evidence, which may include a supplemental hearing, on these issues. The administrative judge shall then issue a new initial decision in accordance with this Remand Order. The

---

[4] On petition for review, the appellant renews her argument that her removal was the product of harmful error. PFR File, Tab 1 at 23. For the reasons explained in the initial decision, we agree with the administrative judge that the appellant did not prove this affirmative defense. ID at 34. We also agree with the administrative judge that the appellant did not prove that her race or color were motivating factors in her removal. ID at 35-36.

remand initial decision may incorporate the administrative judge's previous findings to the extent consistent with this Remand Order.

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.