Margaret MILLER, Plaintiff-Appellant,

v.

BANK OF AMERICA, a corporation, Defendant-Appellee.

No. 76–3344.

United States Court of Appeals, Ninth Circuit.

June 28, 1979.

William J. Weir, Susan G. Tanenbaum, San Francisco, Cal., Vincent J. Blackwood, EEOC, Washington, D. C., for defendant-appellee.

Mary C. Dunlap, Equal Rights Advocates, San Francisco, Cal., for plaintiff-appellant.

Before DUNIWAY and KILKENNY, Circuit Judges, and McGOVERN,* District Judge.

DUNIWAY, Circuit Judge:

Plaintiff Miller, a black woman, was an employee of defendant Bank of America. Her affidavit states that her performance has been rated "superior," and that she had been given a raise in salary. She says that, shortly after, she was fired because she refused her supervisor's demand for sexual favors from, in his words, a "black chick." In this action, after she had filed charges with the Equal Employment Opportunity Commission and received a "right to sue" letter from the Commission, she asserts that she has been discriminated against because of her race and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ff. and of 42 U.S.C. § 1981. The district court gave summary judgment for the Bank, *Miller v. Bank of America*, N.D. Cal., 1976, 418 F.Supp. 233, and she appeals.

In its brief, the Bank concedes that the district judge was mistaken in saying that Miller had "conceded that the case should stand or fall on the issue of sex discrimination," rather than race discrimination. Thus the claim for relief under § 1981 is still in the case.

At oral argument before us, counsel for the Bank made a further concession, namely, that if the Bank, rather than just Miller's supervisor, can be held responsible, the discharge can properly be called one because of Miller's race, color, or sex (42 U.S.C. § 2000e–2(a)(1)), and so a violation of both Title VII and § 1981. Thus there is no issue as to Miller's complaint stating a cause of action,[1] subject to the one issue

---

* The Honorable Walter T. McGovern, Chief Judge, United States District Court for the Western District of Washington, sitting by designation.

1. The Bank's concession is supported by recent decisions both under Title VII and under § 1981. We assume, but need not decide, that the concession is correct. As to Title VII, *see: Tomkins v. Public Service Electric & Gas Co.,* 3 Cir., 1977, 568 F.2d 1044, 1045; *Barnes v. Costle,* 1977, 183 U.S.App.D.C. 90, 561 F.2d 983, 989–992; *Garber v. Saxon Business Products, Inc.,* 4 Cir., 1977, 552 F.2d 1032. *See also Williams v. Bell,* 1978, 190 U.S.App.D.C. 343, 347, 348, 587 F.2d 1240, 1244, n.33, 1245. *Cf. Silver v. KCA, Inc.,* 9 Cir., 1978, 586 F.2d 138, where the conduct complained of was not that of the employee's supervisor or employer, but

upon which counsel elected to stand. That issue is that respondeat superior should not apply because the Bank had an established policy against what Miller said that her supervisor did, that the Bank had provided her with a means of redress through its internal procedures, and that she did not use it, thus forfeiting whatever claim for relief she might otherwise have. As counsel stated, the only issue is Miller's failure to use the Bank's policy and procedure.

In its brief, the Bank also argued that in view of its established policy against behavior by its supervisors of the kind asserted by Miller, it should not be held liable. We are not certain that the Bank's concession covers this issue; so we decide it.

The doctrine of respondeat superior has long been routinely applied in the law of torts. *See* W. Prosser, *Law of Torts*, 4th Ed., 1971, 458–467. It would be shocking to most of us if a court should hold, for example, that a taxi company is not liable for injuries to a pedestrian caused by the negligence of one of its drivers because the company has a safety training program and strictly forbids negligent driving. Nor would the taxi company be exonerated even if the taxi driver, in the course of his employment, became enraged at a jaywalking pedestrian and intentionally ran him down.

■ Title VII and § 1981 define wrongs that are a type of tort, for which an employer may be liable. There is nothing in either act which even hints at a congressional intention that the employer is not to be liable if one of its employees, acting in the course of his employment, commits the tort. Such a rule would create an enormous loophole in the statutes. Most employers today are corporate bodies or quasi-corporate ones such as partnerships. None of any size, including sole proprietorships, can function without employees. The usual rule, that an employer is liable for the torts of its employees, acting in the course of their employment, seems to us to be just as appropriate here as in other cases, at least where, as here, the actor is the supervisor of the wronged employee.

Title VII itself, 42 U.S.C. § 2000e(b), defines "employer" to include "any agent of such a person" (i. e., employer). As the court said in *Flowers v. Crouch-Walker Corp.*, 7 Cir., 1977, 552 F.2d 1277, 1282: "The defendant is liable as principal for any violation of Title VII or section 1981 by Kolkau in his authorized capacity as supervisor." *See also Anderson v. Methodist Evangelical Hospital, Inc.*, 6 Cir., 1972, 464 F.2d 723, 725; *Calcote v. Texas Educational Foundation*, 5 Cir., 1978, 578 F.2d 95, 98; *Friend v. Leidinger*, 4 Cir., 1978, 588 F.2d 61, 69 (Butzner, J., dissenting).

■ Two circuits have applied this reasoning to cases involving conduct of a supervisor almost exactly like that which is alleged here: *Barnes v. Costle, supra*, n.1, 183 U.S.App.D.C. at 100, 561 F.2d at 993; *Tomkins v. Public Service Electric & Gas Co., supra*, n.1, 568 F.2d at 1047. *See also* the following cases dealing with another protective statute, the Fair Labor Standards Act, 29 U.S.C. §§ 201–219; *Lenroot v. Interstate Bakeries Corp.*, 8 Cir., 1945, 146 F.2d 325, 328; *Goldberg v. Kickapoo Prairie Broadcasting Co.*, 8 Cir., 1961, 288 F.2d 778, 781. Our decision in *Silver v. KCA, Inc., supra*, n.1, is not to the contrary. We conclude that respondeat superior does apply here, where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy.

■ There remains the Bank's argument that, under the Bank's policies, Miller could have obtained redress through its personnel department, but did not do so. Therefore,

---

merely a racial slur by a fellow employee against another fellow employee (pp. 140, 141). In light of the Bank's concession, we do not decide the question, but accept the concession as settling the question for this case only.

The Bank does not concede that § 1981 applies to discrimination on account of sex. It does apply to racial discrimination. *See League of Academic Women v. Regents of the University of California*, N.D.Cal., 1972, 343 F.Supp. 636, 638–640.

the Bank says, she should not be permitted to sue. Putting aside material issues of fact regarding whether Miller knew or should have known that she could have sought reinstatement through the personnel department, we decline to read an exhaustion of company remedies requirement into Title VII.

In *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, the employer asked the Supreme Court to make an EEOC finding of "reasonable cause" a jurisdictional prerequisite to bringing a Title VII action. The Court refused:

> The Act does not restrict a complainant's right to sue [in that manner] . . . and we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.

411 U.S. at 798–799, 93 S.Ct. at 1822. The Court's reasoning applies here. We have held that when an employee accuses a union of discrimination in violation of Title VII, the employee need not exhaust union remedies as a prerequisite to suit. *See Smallwood v. National Can Co.*, 9 Cir., 1978, 583 F.2d 419, 421; *Gibson v. Local 40, Supercargoes and Checkers, etc.*, 9 Cir., 1976, 543 F.2d 1259, 1266, n.14; *Oubichon v. North American Rockwell Corp.*, 9 Cir., 1973, 482 F.2d 569, 572. As we observed in *Gibson, supra*, "[a]n employee's Title VII rights are independent of contractual rights. *Alexander v. Gardner-Denver Co.*, 1974, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147. Exhaustion of the latter is therefore not a precondition to a title VII suit." 543 F.2d at 1266, n.14.

In reaching the above conclusion, both the Supreme Court and this court relied in part on the fact that while Congress has established certain preconditions to suit, it has not established use of the employer's personnel procedures as such a precondition. As we said in *Abramson v. University of Hawaii*, 9 Cir., 1979, 594 F.2d 202, 210, "[a]ppellant's claims should be determined by reference to how the University in fact makes tenure decisions, not by reference to how their [sic] guidelines say they [sic]

should." Our holding will not place an unreasonable burden on employers. Title VII requires an employee to file any employment discrimination claim with the EEOC within 180 days of the last of the incidents in question. 42 U.S.C. § 2000e–5(e). The EEOC then notifies the employer of the charges within ten days after receiving the employee's complaint. 42 U.S.C. § 2000e–5(b). If the EEOC determines "that there is reasonable cause to believe the charge is true," it endeavors to eliminate the challenged practices through "informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). An employer whose internal procedures would have redressed the alleged discrimination can avoid litigation by employing those procedures to remedy the discrimination upon receiving notice of the complaint or during the conciliation period.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.