Debra JEPPSEN, Plaintiff,

v.

Esther WUNNICKE, et al., Defendants.

No. F84–015 Civil.

United States District Court,
D. Alaska.

April 4, 1985.

Daniel L. Callahan, Schendel & Callahan, Fairbanks, Alaska, for plaintiff.

Gary Foster, Asst. Atty. Gen., Thomas R. Wickwire, Fairbanks, Alaska, for defendants.

## ORDER

HOLLAND, District Judge.

The court has before it Defendant State of Alaska's motion for summary judgment based upon the theory that Plaintiff, hav-

ing recovered for job-related injuries under the workmen's compensation laws of the State of Alaska, is barred from any recovery in this action under Title VII of the Civil Rights Act of 1964 [1], as amended by the Equal Employment Opportunity Act of 1972 [2], (herein "Title VII") and from any recovery under Alaska's employment discrimination statutes, AS 18.80.200 *et seq.* By way of opposition, Plaintiff has filed a reciprocal motion to strike the State's third and fourth affirmative defenses (Plaintiff styled it as a motion to strike the fourth and fifth affirmative defenses) which raise the same question.

At oral argument, Defendant State of Alaska conceded that Plaintiff's workmen's compensation recovery is not preclusive of a claim by Plaintiff under 42 U.S.C. § 2000e, *et seq.* By agreement of the parties, the question of whether Plaintiff's recovery in workmen's compensation bars an action under AS 18.80.200 *et seq.* was deferred to permit consideration of a further motion recently filed by the State of Alaska which raises a preliminary question regarding whether this court has jurisdiction under any circumstances over Plaintiff's pendent claims, including that under AS 18.80.-200 *et seq.*

■ The court also has before it a motion for ruling on the law of the case. By this motion the State of Alaska seeks to have the court rule on the question of whether a claim under 42 U.S.C. § 2000e–2(a)(1) [3] requires proof of employer knowledge of illegal sex discrimination where the basis for such claim is that claimant's supervisor has created a hostile work environment. The parties seem in agreement that employer knowledge of alleged sex discrimination need not be proved in a "quid pro quo" case where a claimant has shown a tangible job detriment, e.g., termination of

employment or abolition of the job, etc. This appears to be settled law. An employer is held strictly liable for a supervisor's discriminatory acts against a subordinate employee where tangible job detriments are proved. *Henson v. City of Dundee,* 682 F.2d 897, 909 (11th Cir.1982).

As a preliminary matter, this Court notes that no party has questioned that at least four elements must be proved by a Title VII claimant. Those four elements are discussed in *Henson. Id.* at 903–04. The State of Alaska relies upon *Henson* for the proposition that in hostile work environment cases, employer knowledge or constructive knowledge is a fifth element which a claimant must prove. *Id.* at 905. *Henson* so holds under circumstances where the claimant tried but failed to make a case of wrongful discharge in violation of Title VII. In *Henson* the defendant had contended, and the district court agreed, that even in a hostile work environment case, a claimant must prove some tangible job detriment. In reversing the latter holding, the Eleventh Circuit relies upon and finds applicable to sex discrimination cases the holdings in race discrimination cases. In the latter cases, the Fifth Ciruit has found that "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), include "the state of psychological well being at the workplace." *Id.* at 901, *citing Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). The Eleventh Circuit reasons that if the "creating or condoning [of] an environment at the workplace which significantly and adversely affects an employee because of race or ethnicity, regardless of any other tangible job detriment to the protected employee," constitutes a violation of Title VII, then the same must also hold for sex discrimination cases. *Id.* The court explains:

> (a) It shall be an unlawful employment practice for an employer—
> (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to ... terms, conditions, or privileges of employment, because of such individual's ... sex....

**1.** Pub.L. No. 88–352, tit. VII, 78 Stat. 253 (codified as amended at 42 U.S.C. § 2000e *et seq.* (1982)).

**2.** Pub.L. No. 92–261, 86 Stat. 103.

**3.** 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets. A pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment. There is no requirement that an employee subjected to such disparate treatment prove in addition that she has suffered tangible job detriment.

*Id.* at 902. For the foregoing proposition, the Eleventh Circuit also relies upon *Bundy v. Jackson,* 641 F.2d 934, 943–46 (D.C. Cir.1981), and cites EEOC regulations to the same effect, 29 C.F.R. § 1604.11(a).

Turning to the point now before us, the Court in *Henson* proceeds to set out the elements which it requires a claimant to establish in a hostile work environment case. As already suggested, the fifth element which the Eleventh Circuit imposes upon a hostile work environment claimant is characterized as *"respondeat superior",* *Henson,* 682 F.2d at 905. Under the *respondeat superior* rubric, the court requires that a claimant show that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." *Id.* For this proposition, the court cited *Bundy v. Jackson,* 641 F.2d at 943 & n. 8, and the case of *Vinson v. Taylor,* 23 Fair Empl.Prac.Cas. (BNA) at 41–42.

The court having found that Henson had made a *prima facie* case for violation of Title VII, the district court dismissal of her claim was overruled and the matter re-manded for a new trial. At this juncture it will be pertinent to note that the appeal did not raise the question of whether employer knowledge was in fact an element of a claimant's case under 42 U.S.C. § 2000e-2. We also note that it is not all that clear that *Henson* was purely a hostile work environment case. It seems clear enough from the recitation of facts as well as some additional issues argued in *Henson* that claimant ultimately resigned her employment and in litigation claimed a constructive discharge under Title VII. *Henson,* 682 F.2d at 901, 907–08. These circumstances cause this court to feel that the court in *Henson* may very well have been doing precisely what this court has been called upon to do here: to give the parties an advisory ruling as to the law of this case in order that they may present their facts and make their arguments employing the legal frame of reference which the court will apply in deciding the case. The point here is that the Eleventh Circuit was not, as this court is not, dealing with a case which raised in isolation the question of whether or not employer knowledge was a requisite to a Title VII hostile work environment case.

For her part, Plaintiff here relies upon the decision of the United States Court of Appeals for the District of Columbia in *Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir. 1985), which was decided sometime after the subject motion had been initially briefed by the parties.

At oral argument, Defendant State of Alaska contended that *Vinson* was in reality not a hostile work environment case but, rather, just another case of lost, tangible job benefits.[4] While the circuit court's recitation of the facts in *Vinson* could lead one to believe that the case involved a loss of tangible job benefits, it is very clear that the court analyzed and decided the case as a hostile work environment matter. In this regard, the circuit court recognized that a

**4.** In fairness to counsel for the State who argued this case, it appears that the matter was thrust upon him with little notice or opportunity to prepare. This is indeed unfortunate since counsel's hurried interpretation of *Vinson* caused him to argue an absolutely wrong basis for distinguishing this case and *Vinson.*

Title VII plaintiff has two avenues of claim open to him or her:

> The first was recognized in *Barnes v. Costle* [561 F.2d 983 (D.C.Cir.1977)], where we held that abolition of the job of a female employee because she spurned her male superior's sexual advances was an infringement of Title VII. [*Id.* at 992.] The second approach is illustrated by *Bundy v. Jackson,* [641 F.2d 934, 946 (D.C.Cir.1981)] decided after the district court's judgment herein, where we sustained a Title VII cause of action in favor of a woman employee seeking relief simply for pervasive on-the-job sexual harassment by her superiors. [*Id.* at 943–44.]

*Vinson,* 753 F.2d at 144–45. At this juncture, the circuit court expressly held:

> Vinson's grievance was clearly of the latter type and, accordingly, her case counseled an inquiry as to whether Taylor "created or condoned a substantially discriminatory work *environment,* regardless of whether the complaining employees lost any tangible job benefits as a result of the discrimination." [*Citing Bundy v. Jackson,* 641 F.2d at 943–944 (emphasis in original).]

*Id.* at 145.

This court's analysis of *Henson* and *Vinson* leads to the conclusion that, even in absolutely identical hostile work environment cases, the Eleventh Circuit and the D.C. Circuit would quite possibly, although not necessarily, reach contrary results on the question of whether employer knowledge is a requisite to such a claim. What is very clear, however, is that only the D.C. Circuit of those discussed by the parties has faced this question squarely and ruled upon it after full exposition under our adversary process. It is particularly significant to this court's thinking that the district court decision in *Vinson* was relied upon by the *Henson* court, and the D.C.

Circuit has now reversed that initial *Vinson* decision.

It should also be noted in evaluating *Henson* and *Vinson* that *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981), which the court in *Henson* also relied upon and which the court in *Vinson* cited repeatedly, simply does not stand for the proposition that a hostile work environment claimant must prove, as a part of his or her case, employer knowledge. Rather, in *Bundy* the circuit court was dealing with a clear-cut case involving employer knowledge and inaction as regards claimed sex discrimination. *Id.* at 943. What *Bundy* says by way of speculation is that the circuit court's earlier case of *Barnes v. Costle,* 561 F.2d 983 (D.C.Cir.1977), may stand for the proposition that an employer can avoid liability if the harassing supervisor did so in contravention of an express employer policy against such, *and* without the employer's knowledge, *and* if the employer moved promptly and efficiently to rectify the offense. Even if it is assumed that *Barnes* and *Bundy* did stand for the proposition that in some situations employer knowledge is a requirement of some Title VII claims [5], that proposition was clearly rejected in the appellate decision in *Vinson v. Taylor,* 753 F.2d at 151.

After a careful analysis of 42 U.S.C. § 2000e, the legislative history of that statute, and the regulations implementing the statute adopted by EEOC, the D.C. Circuit expressly held that an employer who is not on notice of sexual harassment cannot escape liability, even in a hostile work environment case; and in so holding, the D.C. Circuit also expressly rejects the idea that the common law doctrine of *respondeat superior* is either a necessary or an appropriate foundation or tool for interpreting Title VII. *Id.* at 150–51. In the latter regard, the D.C. Circuit pointedly observes that:

> litigated in *Barnes* or *Bundy:* whether Title VII imposes upon an employer without specific notice of sexual harassment by supervisory personnel responsibility for that species of discrimination.

---

**5.** This court thinks that the D.C. Circuit Court never did so hold. At *Vinson,* 753 F.2d at 147, we read:

> Today, however, we are confronted by the question that was not directly and actively

Confining liability, as the common law would, to situations in which a supervisor acted within the scope of his authority conceivably could lead to the ludicrous result that employers would become accountable only if they explicitly require or consciously allow their supervisors to molest women employees. While modern courts seem more inclined to treat intentional misconduct on the job as arising out of and in the course of the employment, and thus as providing a basis for liability under a somewhat expanded theory of respondeat superior, there simply is no need to so confine either the analysis or the solution where Title VII applies.

To hold that an employer cannot be reached for Title VII violations unknown to him is, too, to open the door to circumvention of Title VII by the simple expedient of looking the other way, even as signs of discriminatory practice begin to gather on the horizon. [Citations omitted.]

*Id.* at 151. At this juncture, the D.C. Circuit cites and quotes the Ninth Circuit in *Miller v. Bank of America*, 600 F.2d 211, 213 (1979). We shall have more to say of the latter case in a moment.

■ After some further analysis of the foregoing problem the decision concludes that:

A requirement of knowledge by the employer of the Title VII transgressions by supervisory personnel would effectively eliminate vicarious Title VII responsibility altogether. It would reserve Title VII liability for only those employers who failed to redress known violations—a direct, not a substitutional, theory of attribution. This would be a retreat from the level of protection Title VII has consistently and designedly afforded, and take a backward step we refuse to endorse. [Citations omitted.]

*Id.* at 151–52. This Court adopts the holding as well as the reasoning of *Vinson* as set out above.

This Court recognizes that hostile work environment cases present some especially difficult problems for the finder of fact. Without some tangible event—tangible job detriment such as a refusal to hire, a termination without cause, or a refused raise in pay or promotion—the court can find itself with precious little objective evidence of employer wrongdoing. Worse yet, in a pure hostile work environment case, the Court perceives that it will more likely than not be confronted with diametrically opposed testimony from the employee and the alleged offending employer-supervisor. As a consequence, one must necessarily anticipate arguments such as: "If the hostile and offensive sexual harassment were really going on or were that offensive, plainly the employee would have quit the job." The Court is concerned that this argument would in many if not most cases be specious. The practical problem is that the employee who stays on the job the longest and puts up with the most offensive sexual harassment is more likely than not going to be the employee who is the most dependent on retaining the job. Worse yet, this same employee is likely to be the one most reticent to complain, and thereby pass knowledge to a higher supervisor, lest he or she be confronted by the same kind of response that Bundy received when she sought to complain—that is, her complaint was not taken seriously, poor performance ratings started appearing, and ultimately a promotion was denied.

Requiring knowledge on the part of the employer in a hostile work environment case might very well provide the court with an easy tool to use in deciding many cases, but this court fears that such a requirement holds the potential for grave injustice as well as subversion of the purpose of Title VII.

So far as this Court is aware, the Ninth Circuit Court of Appeals has not addressed the question which we deal with here. *Miller v. Bank of America*, 600 F.2d 211 (9th Cir.1979), in substance holds that an employer can be held liable for sex discrimination by an employee-supervisor, despite the employer's lack of knowledge and even where an express company policy of the

employer was violated by the supervisor. *Miller*, however, is not instructive as regards the problem we confront since it is a "tangible job benefit" case rather than a "hostile work environment" case.

The foregoing brings this court to a final observation on the subject. The distinction above alluded to between "tangible job benefit" ("quid pro quo") cases and "hostile work environment" cases is often discussed by courts, but this court finds it an extremely slippery concept. *See Henson*, 682 F.2d at 908 n. 18. The situations which are dealt with in sex discrimination cases, as well as other discrimination cases, present a factual and legal continuum. There is no neat square peg that fits into a square hole nor a round peg for a round hole. Rather, there is a seemingly endless variety of sex discrimination cases with one situation blending into another when comparisons are made. This court rejects the notion that a knowledge requirement exists in one situation but not in the other. Preventing sex discrimination in employment is too important a goal to turn upon the vagaries of what does and what does not constitute a *tangible* job benefit as distinguished from what is evidently considered to be an *intangible* benefit such as psychological well-being at the workplace. Rather, we must start from the proposition that there is, by virtue of Title VII, a statutory right to a job environment where none of the terms, conditions, or privileges of employment are adversely impacted by sex discrimination. *See Vinson*, 753 F.2d at 145 & n. 33; 42 U.S.C. § 2000e–2(a)(1).

This court concludes that employer knowledge is not an element of this Title VII sex discrimination case.[6]

---

**6.** This order does not require the entry of any    judgment by the Clerk of Court.