Evelyn JORDAN, Plaintiff–Appellant,

v.

William P. CLARK, Secretary of the Department of the Interior, Defendant–Appellee.

No. 86–3985.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided May 24, 1988.

Thomas H. Dahl, Anchorage, Alaska, for plaintiff-appellant.

Mark A. Rosenbaum, Asst. U.S. Atty., Anchorage, Alaska, for defendant-appellee.

Before SNEED, HALL and NOONAN, Circuit Judges.

SNEED, Circuit Judge:

Evelyn Jordan appeals from a district court judgment against her in her Title VII suit in which she alleged sexual discrimination and harassment, retaliation for filing an administrative complaint, and constructive termination arising out of her employment with the U.S. Fish & Wildlife Service. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

Evelyn Jordan began working for the U.S. Fish & Wildlife Service (Service) in April 1972. She was hired as an administrative assistant at the GS–5 level.[1] Her immediate supervisor was an administrative officer named Ronald DeVall. In January 1975 Jordan filed an informal complaint and in February 1975 she filed a formal complaint with the Service, alleging that she had been discriminated against because of her sex. In particular, she alleged that during a lunch date DeVall had suggested that she sleep with him in order to keep her job and to get a promotion, and that after she refused, he retaliated against her.

The Service's investigator completed her report in April 1975. She concluded that Jordan had not been discriminated against, but that there had been retaliation against Jordan for filing her complaint. Jordan went on leave without pay that same month. Administrative proceedings within the Service, the Department of the Interior, and the Civil Service Commission consumed the next three-and-one-half years, and con-

cluded in September 1978 with a decision by the Civil Service Commission Appeals Review Board that Jordan had not been sexually discriminated against.

The Board sent a copy of its decision to Jordan on September 22, 1978. On October 27, 1978, Jordan first filed suit against the Service in federal district court, alleging sex discrimination and retaliation under Title VII. Her complaint named the Service, the Department of the Interior, and two of her supervisors as defendants. On January 5, 1979, the defendants filed a motion to dismiss on the ground that Jordan's complaint did not name the Secretary of the Department of the Interior as the defendant, as required by 42 U.S.C. § 2000e–16(c). On March 14, 1979, the district court gave Jordan leave to amend her complaint, and on March 23, 1979, Jordan filed an amended complaint that named Cecil Andrus, then Secretary of the Department of the Interior, as a defendant.

Jordan returned to work in November 1978. She contends that her old position had not been abolished, and that she was harassed by being given a clerical job. The district court found that her old job "simply didn't exist anymore," and that she was assigned to do administrative work. E.R. tab 184 at 11. In January 1979 Jordan again went on leave without pay. The Service conducted a fitness hearing and as a result ordered Jordan to return to work in November 1979. Jordan did not return, and the Service terminated her employment in January 1980.

Jordan's first counsel did not move her case forward, and withdrew in March 1981. In October 1985, the district court granted the defendant's motion for partial summary judgment, holding that Jordan's termination in January 1980 was not improper. However, the court expressly reserved the possibility that Jordan might prevail on her other claims, including constructive termi-

---

1. The government says in its statement of facts that Jordan was hired as an administrative clerk and was "converted" to administrative assistant in September 1972, after the alleged proposition by her supervisor. The government does not contest, however, the district court's finding that Jordan was hired as an administrative assistant. *See* Excerpt of Record (E.R.) tab 184 at 2. At most, the conversion of Jordan's position was a change from part-time to full-time, with no increase in GS level. Appellee's Brief at 15–16.

nation, which might allow her to be reinstated in her job. E.R. tab 150.

The parties tried the case to the district court judge in March 1986. The judge found that Jordan had not been discriminated against on the basis of her sex, that she had not been retaliated against for filing an administrative complaint, and that she had not been constructively terminated. Findings of Fact and Conclusions of Law, Excerpt of Record (E.R.) at 9, 11, 12. Jordan timely appealed.

## II. JURISDICTION

■ At the outset, we must address the defendant's claim that the district court lacked jurisdiction to hear this case because Jordan did not name the Secretary of the Interior as a defendant in her initial complaint. Resolution of this issue is more difficult than one might suppose. Our review is de novo, of course. *Lofton v. Heckler*, 781 F.2d 1390, 1392 (9th Cir.1986).

■ Title VII protects government employees from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16(a) (1982). After pursuing administrative remedies, a government employee may file a civil suit against his or her employer under 42 U.S.C. § 2000e–16(c), which states:

> Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, ... an employee ... may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

We have stated that "the naming of the proper defendant within the 30–day period is a jurisdictional requirement." *Hymen v. Merit Sys. Protection Bd.*, 799 F.2d 1421, 1422 (9th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987).

Therefore, the requirement cannot be waived by the parties and must be addressed by this court. *Office & Professional Employees Ins. Trust Fund v. Laborers Funds*, 783 F.2d 919, 921 (9th Cir. 1986).

It is undisputed that the proper defendant was not named until five months after Jordan filed her initial complaint. The district court therefore lacked jurisdiction unless Jordan's amended complaint related back to her initial complaint under Federal Rule of Civil Procedure 15(c). Rule 15(c) states:

> An amendment changing the party against whom a claim is asserted relates back if ... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

> The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, ... satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

*See Schiavone v. Fortune, Inc.*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

In her initial complaint, Jordan stated that she received notice of the final agency action on October 1, 1978. She therefore had until October 31, 1978 to fulfill Rule 15's requirements. The record indicates that on October 30, 1978 she served the U.S. Attorney for Anchorage, Alaska and mailed process to the U.S. Attorney General. *See* District Court Clerk's Record, Docket No. 4. Jordan's amended complaint thus related back to her initial complaint under Rule 15(c), and the district court had jurisdiction over her suit. *See Cooper v.*

*United States Postal Service,* 740 F.2d 714, 717 (9th Cir.1984), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985). Our jurisdiction rests upon 28 U.S. C. § 1291.

## III. DISCUSSION

On appeal, Jordan's arguments focus on alleged errors of the district court with respect to sexual harassment, retaliation, and the partial summary judgment on the propriety of the January 1980 termination.

### A. Sexual Harassment

Jordan's harassment claim focuses on whether she was subjected to a hostile or abusive environment. The district court found that she was not; Jordan argues that the court misconstrued the law, ignored relevant evidence, and reached conclusions contrary to the evidence.

■ In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court endorsed the "hostile or abusive work environment" theory of sexual harassment. Under this theory, a sexually harassed plaintiff does not have to show that her harassment resulted in "tangible loss" of "an economic character" in order to prove a violation of Title VII. *Id.* at 64, 106 S.Ct. 2404. It is sufficient for the plaintiff to show that "discrimination based on sex has created a hostile or abusive work environ-

ment." *Id.* at 66, 106 S.Ct. at 2405. To make this showing, the plaintiff must demonstrate that she was subjected to "sexual advances, requests for sexual favors, [or] other verbal or physical conduct of a sexual nature," *id.* at 65, 106 S.Ct. at 2405 (quoting Equal Employment Opportunity Commission Guidelines, 29 C.F.R. § 1604.11(a)); [2] that this conduct was unwelcome, *id.* at 65, 68, 106 S.Ct. at 2405, 2406; and that the conduct was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Id.* at 67, 106 S.Ct. at 2406 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).[3]

Before turning to Jordan's arguments, we must dispose of the defendant's contention that she did not raise the abusive environment theory below, and that it is therefore waived on appeal.

*1. Did the court consider the abusive environment theory of sexual harassment?*

■ The government, in arguing that Jordan did not raise the abusive environment issue before the district court, points to the Joint Statement of Issues, Supplemental Excerpt of Record (S.E.R.) tab 98, plaintiff's Final Statement of Issues, S.E.R. tab 91, and the Final Pre-trial Order, E.R. tab 169, and states that none of these documents identify abusive environment as an

2. In full, the Guidelines state, "Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, *requests for sexual favors,* and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a) (1987) (footnote omitted).

3. We note that the *Meritor* Court was concerned with construction of 42 U.S.C. § 2000e–2(a)(1), which makes it "an unlawful employment practice ... to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such *employee's race, color, religion, sex, or national origin.*" Jordan sues under § 2000e–16(a), which states that "All personnel actions affecting [government] employees ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." The difference in wording between the two sections is immaterial in this context, and we find that Title VII protects government employees from sexual harassment to the same degree private employees are protected. *See Garcia v. Lawn,* 805 F.2d 1400, 1404 (9th Cir. 1986) ("Congress, in applying the anti-employment discrimination provisions of Title VII to the government, section 717, 42 U.S.C. § 2000e–16, expressed an intent to make all remedies that are available to employees of private employers available also to employees of the government.").

issue to be considered at trial.[4] The government is correct that these documents reflect a focus unaided by *Meritor Savings Bank*, but it is not correct that these documents never mention the issue of abusive environment. In the pre-trial Joint Statement of Issues, S.E.R. tab 98 at 3, Jordan proposed the following issue: "Did plaintiff's supervisors create an abusive working environment so that plaintiff was constructively discharged, even before her actual discharge?" The district court adopted this issue in its final pre-trial order. *See* E.R. tab 169.

Moreover, it is clear that the court did consider whether Jordan was subjected to a hostile or abusive environment. In its Findings of Fact and Conclusions of Law, the district court concluded that Jordan "was not subjected to harassment which rose to the stature of a condition of employment or an abusive working environment." E.R. tab 184 at 12. The court also found that specific allegations by Jordan did not create an inference that an abusive environment existed. *See* E.R. tab 184 at 5, 6.

▪ In reaching this conclusion, the court did not disregard Jordan's procedural rights in this type of case. Thus, after the defendant moved to dismiss at the close of Jordan's case, the court held that Jordan had established a prima facie case, stating,

"There is some evidence of unwelcome sexual advances.... There is some evidence of harassment that rose to the level of affecting a condition of employment. And in that regard, what I'm saying is that there is some evidence of a psychological well-being problem in this case. There is some evidence of an abusive work environment, enough so that I feel that the Defendant must be required to go forward with its portion of the case." This language echoes the language of the Eleventh Circuit in *Henson v. City of Dundee*, 682 F.2d 897, 903–04 (11th Cir.1982), which was relied upon by the Supreme Court in *Meritor*.[5] Finally, we note that this trial judge had had experience with this theory of recovery before. *See Jeppsen v. Wunnicke*, 611 F.Supp. 78 (D. Alaska 1985).[6]

### 2. *Was Jordan subjected to an abusive environment?*

We now must decide whether the trial court erred in holding that an abusive environment did not exist in this case. Jordan argues that the district court misunderstood the hostile environment theory. In particular, she argues that the district court did not consider "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" as factors in determining the exist-

---

**4.** The government also implies that *Meritor* should not be applied retroactively. *Meritor* was decided after trial in this case. But, as both parties acknowledge, the issue of abusive environment had been raised successfully in other courts. *See, e.g., Bundy v. Jackson*, 641 F.2d 934, 943 (D.C. Cir.1981); *Henson v. City of Dundee*, 682 F.2d 897, 902 (11th Cir.1982). In fact, the district court in this case had previously recognized that a hostile work environment was a valid Title VII claim. *Jeppsen v. Wunnicke*, 611 F.Supp. 78 (D. Alaska 1985). Finally, as Jordan notes, "the EEOC guidelines clearly foreshadowed *Meritor*." Reply Brief at 9. The EEOC issued these guidelines in 1980. The fact that so many courts, as well as the EEOC, had recognized abusive environment as a Title VII claim indicates that *Meritor* did not signal a change in the law, and that we therefore need not consider whether to apply it retroactively.

**5.** We also note that Jordan's counsel called the trial court's attention to *Henson* in her opening argument to the court.

**6.** It is possible that the district court considered the issue only in the contexts of (1) DeVall's treatment of Jordan, *see* Finding of Fact 10, E.R. tab 184 at 5, and (2) the alleged retaliation against Jordan for rejecting DeVall's advances and for filing a complaint, *see* Finding of Fact 13, E.R. tab 184 at 6. In other words, the parties may have argued over whether an abusive environment existed without explicitly recognizing that the case law and the EEOC guidelines supported the theory that an abusive environment by itself could violate Title VII. But even if the issue was not clearly framed at trial as a separate theory of recovery, we have discretion to decide the issue on appeal, as long as the district court fully developed the factual record. *See Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985); *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978). The defendant gives us no reason to believe that a more careful framing of the issue would have resulted in additional facts being brought forward.

ence of sexual harassment. Appellant's Brief at 24. Jordan is incorrect. The court did consider those factors at some length, but concluded that they either did not occur, or were not sufficiently pervasive to alter the terms of employment and create an abusive work environment. *See* Findings of Fact 6–12, E.R. tab 184 at 4–6.

Jordan also challenges several of the court's factual findings, as well as its conclusion that Jordan was not subjected to a hostile or abusive work environment. The former we review under the clearly erroneous standard, while the latter is reviewed de novo.[7]

In challenging the district court's findings, Jordan relies largely on her own testimony, buttressed somewhat by that of her predecessor, Emily Beller. She simply ignores the testimony of the other witnesses at trial, many of whom disputed Jordan's allegations. It is true that with regard to many of her allegations, the trial court heard testimony only from DeVall and Jordan. But Jordan gives us no reason to doubt the court's decision not to credit her version of events. We may not set aside findings of fact unless we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Johnson v. United States Postal Serv.*, 756 F.2d 1461, 1464 (9th Cir.1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In particular, "[c]redibility determinations are insulated from appellate review." *Johnson*, 756 F.2d at 1464. The court's findings here are far from clearly erroneous.

For example, Jordan says that DeVall harassed her by calling her at home. The court found that Jordan did not present sufficient evidence that the phone calls occurred. Finding of Fact 8, E.R. tab 184 at 4. She alleged that DeVall harassed her at work by touching her improperly. DeVall

denied this. The court found it "inconceivable" that she would never have mentioned this allegation once during the lengthy administrative proceedings if the touching did occur, and found that what touching did occur "was of so insignificant a nature as to not rise to the stature of unwelcome sexual conduct." Finding of Fact 9, E.R. tab 184 at 5. Jordan alleged that DeVall made sexist comments at work. At trial, witnesses testified that many people in the office (both men and women) told off-color jokes.

Jordan's most serious allegation is that DeVall told her that she would have to sleep with him "two or three times a week in order to keep [her] job and get a promotion." Appellant's Brief at 13. DeVall testified that she propositioned him. The district court split the difference and decided that they "were more probably than not engaged in flirtatious conversation and conduct which could, and probably did, leave each of them with the impression that he or she had been the recipient of a sexual advance." Finding of Fact 6, E.R. tab 184 at 4. Again, this finding is not clearly erroneous. We agree, therefore, that the trial court did not err in holding that an abusive environment did not exist in this case.

**B. Retaliation**

We now turn to Jordan's retaliation claim. She argues that she was retaliated against for rejecting DeVall's advances and for filing an administrative complaint alleging discrimination. Title VII states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or par-

---

7. Its findings as to whether the plaintiff was subjected to unwelcome sexual advances or other conduct of a sexual nature are primarily factual. *See Meritor*, 477 U.S. at 68, 106 S.Ct. at 2406. But its final conclusion that this conduct was not so severe or pervasive that it altered the plaintiff's employment by creating an abusive

environment "requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles." *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We therefore review that conclusion de novo.

ticipated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (1982).[8] To succeed on a retaliation claim, a plaintiff must first establish a prima facie case. To establish such a case, Jordan must show "that she engaged in a protected activity, that she was thereafter subjected by her employer to adverse employment action, and that a causal link exists between the two." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982); *see Wrighten v. Metropolitan Hosps., Inc.*, 726 F.2d 1346, 1354 (9th Cir.1984). The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987); *see Miller v. Fairchild Indus.*, 797 F.2d 727, 731–32 (9th Cir.1986); *Mannikko v. Harrah's Reno, Inc.*, 630 F.Supp. 191, 197 (D.Nev.1986). If the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-retaliatory reason for the adverse action." *Cohen*, 686 F.2d at 796. The burden then shifts back to the plaintiff to show that the asserted reason is pretextual. *Id.*

■ The district court did not explicitly conform its findings to this framework. But it appears to have found (1) that Jordan failed to establish that some of the alleged adverse actions were actually ad-

verse; and (2) that the defendant showed legitimate, nonpretextual reasons for the adverse actions actually taken against Jordan. These findings add up to a conclusion that the defendant did not retaliate against Jordan which we review under the clearly erroneous standard. *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir.1986).

■ Jordan's approach is somewhat different. She says that she engaged in two types of protected activity: (1) she resisted DeVall's overtures toward her; and (2) she filed an administrative complaint alleging sex discrimination. While the second action is protected activity under § 2000e–3(a), her alleged resistance to DeVall's advances only qualifies as protected activity if DeVall's advances actually occurred and were an "unlawful employment practice" under Title VII. The district court found this not to be the case, and its findings are not clearly erroneous. This leaves only the administrative complaint as a protected activity. As to it, she must show that any adverse action was caused by such activity.

■ But was there any such "adverse action"? Jordan lists several adverse actions she alleges were taken against her in retaliation. She says that these actions culminated in her constructive termination. She alleges: (1) DeVall delayed submitting Jordan's promotion papers in Fall 1972, so that Jordan remained at a GS–5 level longer than necessary;[9] (2)

---

**8.** We have stated that "it is clear that Congress incorporated the protections against retaliation in its enactment of § 2000e–16." *Ayon v. Sampson*, 547 F.2d 446, 450 (9th Cir.1976).

**9.** Before Jordan began working at the Service, she worked at the Alaska Railroad. In a pre-trial joint statement of uncontested facts, the parties agreed that Jordan was employed by the Alaska Railroad at the equivalent of a GS–4 level. The district court adopted the stipulation of facts in its final pre-trial order. *See* E.R. tab 169 at 2. In April 1972, when Jordan started at the Service, she was hired at the GS–5 level. It was necessary for her to spend a year at the GS–5 level before she was eligible to be promoted. She was promoted to the GS–7 level in June 1973.

Jordan now argues that her position at the Alaska Railroad was a GS–5 equivalent, and that her pre-trial stipulation to the contrary was in error. If Jordan was the equivalent of a GS–5 employee at the Alaska Railroad, then she would have been eligible for promotion to a GS–7 position as soon as she began working for the Service. Appellant's Reply Brief at 23. Her promotion to a GS–7 position therefore would have occurred eighteen months after completing her time-in-grade, not two months, as the court found. *Id.* at 25.

Federal Rule of Civil Procedure 16(e) states that a pre-trial order "shall control the subsequent course of the action unless modified by a subsequent order" and a final pre-trial order "shall be modified only to prevent manifest injustice." The decision whether to amend the pre-trial order is within the discretion of the

DeVall increased her duties without amending her job description; (3) DeVall denied her requests to attend management courses; (4) DeVall undermined her position after October 1974 by taking away higher level duties; (5) DeVall gave her several poor performance appraisals and put derogatory memos in her file; (6) Jordan's supervisors drew up Performance Standards for her position, allegedly as a means of reviewing later performance unfavorably; (7) DeVall directed Jordan's work to other employees; and (8) upon her return to work in November 1978, Jordan was given a position limited to clerical work. Appellant's Brief at 33–35, 37. She argues that these actions amounted to a pattern of harassment that caused her constructive discharge. *Id.* at 39.[10]

■ The district court examined all of the challenged actions, including those that took place before Jordan filed her administrative complaint,[11] and found that: (1) some of these actions occurred, but did not really have an adverse impact on Jordan; (2) those adverse actions that the defendant took were not caused by protected activity because the defendant had legitimate, nonpretextual reasons for the adverse actions it did take; and (3) the actions taken did not create an abusive environment that led to Jordan's constructive discharge. It stated, "The conduct which Plaintiff asserts to be retaliatory appears to the Court to be more a reaction to a problem of clashing personalities than acts in retaliation for the filing of a discrimination complaint." Finding of Fact 16, E.R. tab 184 at 7.

The district court's findings are not clearly erroneous. After reviewing the

record, we would reach the same conclusion under the de novo standard.

## C. Partial Summary Judgment

■ In the October 1985 partial summary judgment, the trial court held that the defendant terminated Jordan's employment in January 1980 because Jordan refused to return to work after November 1979. The court held that the defendant did not have a discriminatory or retaliatory reason for the discharge, and that 42 U.S.C. § 2000e–5(g) therefore prevented Jordan from being reinstated into her job because of the January 1980 termination. E.R. tab 150.

The defendant suggests that Jordan cannot challenge this partial summary judgment because Jordan's attorney did not file a motion in opposition to the defendant's request for such judgment. Local General Rule 5(B)(4) provides that "[f]ailure to file a brief by the adverse party shall be deemed an admission that, in the opinion of counsel, the motion is well taken." The defendant relies on this rule, which the trial court also relied on in part. However, Jordan wrote a letter to the court, apparently with the primary intention of requesting an extension of time for her attorney to file a response to the defendant's motion. *See* Supplement to Appellant's Appendix, Reply Brief. The court did not consider this letter. *Id.*

Jordan does not appear to argue that the court should have considered the letter as a request for an extension of time; rather, she argues that the letter "sufficiently raise[d] substantial issues of fact to pre-

---

trial court. *See Colvin v. United States,* 549 F.2d 1338, 1340 (9th Cir.1977).

There is no "manifest injustice" here. Moreover, Jordan never moved at trial for a modification of the pre-trial order. After reviewing the record, we find that the trial court's decision to rely on the stipulation of facts was not an abuse of discretion.

**10.** "A constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working condi-

tions.'" *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987) (*quoting Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984)). If shown, constructive discharge is an adverse employment action. *See* 3 A. Larson & L. Larson, *Employment Discrimination* § 87.20, at 17–103 to 17–105 (1987).

**11.** The district court reviewed the actions that took place before Jordan filed her complaint as if DeVall did proposition Jordan and she rejected him. *See* Findings of Fact 14, 15, 16, E.R. tab 184 at 6–7.

**1378**

clude summary judgment, at least by default." Appellant's Brief at 40.

Utilizing the de novo standard, we affirm the district court's grant of partial summary judgment. First, Jordan does not contest the district court's decision that the local rules prevented consideration of the letter. Second, even if the court should have considered it, the letter did not raise a genuine issue of material fact as to the reason for Jordan's January 1980 termination. Nor does Jordan raise a factual issue as to that question now. The district court found that Jordan was finally terminated because she refused to return to work. Jordan argues that she did not return to work because she had been constructively discharged. That argument is not inconsistent with the government's assertion that she was finally, formally terminated in January 1980 because she would not return to work.[12] We therefore affirm the district court's October 1985 partial summary judgment.

**D. The Administrative Record**

■ This leaves only the issue pertaining to Jordan's 773–page administrative record. The defendant successfully moved to admit the entire record. Jordan now argues that the district court erred in admitting the entire record. The decision to admit the record was within the discretion of the trial judge. *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 504 (9th

Cir.1981); *Bradshaw v. Zoological Soc'y*, 569 F.2d 1066, 1069 (9th Cir.1978).

At the time the court admitted the record, it stated that it would read only the parts of the record that the parties indicated. Later, the court told the parties that it had read the entire record. Jordan argues that she relied on the court's promise not to read the entire record. We fail to see how Jordan was hurt or the court erred in reading all of a record that it admitted into evidence.

■ Jordan insists, however, that the record "was incomplete and tainted." This evidence consists of Jordan's testimony that she remembered seeing some documents "packed and ready to be sent to Washington as a part of the report" that, according to Jordan, were not included in the record introduced at trial. Appellant's Brief at 44–45. This is too problematic; it is insufficient to lead us to the conclusion that the record was "tainted."[13]

AFFIRMED.

---

12. Of course, if Jordan had been able to prove at trial that she was constructively terminated, then reinstatement still would have been a possible remedy. The October 1985 partial summary judgment did not foreclose the remedy of reinstatement for constructive discharge. E.R. tab 150.

13. Even if Jordan could show that the admission of the entire record was improper, that alone would not be ground for reversal "if there was competent evidence received sufficient to support the findings. The judge will be presumed to have disregarded the inadmissible and relied on the competent evidence." *Plummer*, 656 F.2d at 505 (quoting E. Cleary, *McCormick on Evidence* § 60, at 137 (2d ed. 1972)). There was sufficient evidence outside the administrative record to support the court's findings.