95 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Willis TATE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary, Defendant-Appellee.
 No. 95-35650.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 25, 1996.
Decided Aug. 23, 1996.
 
 Before: BROWNING and T.G. NELSON, Circuit Judges, and SMITH,* District Judge.
 MEMORANDUM**
 Tate appeals the district court's grant of summary judgment in favor of the Department of Health and Human Services ("DHHS") and dismissal of his race discrimination and retaliation suit. We reverse and remand.
 I.
 Tate's initial complaint to his EEO counselor on April 15, 1992, was timely under 29 C.F.R. § 1613.214(a)(1)(i) (1992). The time period under § 1613.214 begins to run when "the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." Boyd v. U.S. Postal Service, 752 F.2d 410, 414 (9th Cir.1985). Tate alleges that his low 1991 performance evaluation was the result of race discrimination and retaliation, but he did not learn that his rating was lower than the ratings of his peers until April, 1992. Since Tate had no knowledge he had been treated differently from his coworkers until April, his April 15 complaint to his EEO officer was timely. Since Tate alleges a continuing violation of Title VII, all conduct "like or reasonably related to the events charged" in the complaint "occurring before and after the filing of the EEO charge" is drawn within the ambit of the complaint. Greenlaw v. Garrett, 59 F.3d 994, 1000 (9th Cir.1995).
 II.
 The burdens and order of proof in a Title VII claim are well-established. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To survive summary judgment, Tate must establish a prima facie case of discrimination or retaliation. DHHS must then articulate a legitimate, nondiscriminatory reason for its employment decisions. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). If DHHS offers such an explanation, Tate must raise a genuine factual issue as to whether the articulated reason is pretextual. Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993). If Tate raises a genuine issue of fact as to whether the explanation is true, summary judgment is inappropriate. Id..
 A.
 To make out a prima facie case of race discrimination, Tate must offer evidence that he was treated less favorably than non-minority workers "under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253. To establish a prima facie case of retaliation, Tate must demonstrate that 1) he engaged in an activity protected under Title VII, 2) his employer subjected him to an adverse employment action,[1] and 3) there was a causal link between the protected activity and the adverse employment decision. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir.1994). To establish the causal link under this test, Tate must produce evidence "sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982).
 Tate has not made out a prima facie case of race discrimination. The only evidence directly referring to Tate's race was a single comment made nearly a decade ago by an unspecified person. The fact that one African-American employee whom Crossman supervised was transferred and another left the job is merely conjectural evidence of racial animus. While Tate may have been singled out for some purposes, he has shown no evidence linking unfavorable treatment to his race, nor has he shown that generally minority workers suffered similar unfavorable treatment.
 Tate has, however, established a prima facie case of retaliation. We have stated both that the degree of proof necessary to establish a prima facie case is "very little," Wallis, 26 F.3d at 889, and that evidence of animus strengthens a circumstantial case. Washington, 10 F.3d at 1434. Boyce's and deMaar's obvious retaliatory animus toward Tate supports his claim of retaliation. See Malarkey v. Texaco, Inc., 983 F.2d 1204, 1210-11 (2d Cir.1992). Crossman's presence at a 1990 meeting where another employee was threatened with retaliation for his support of Tate without objection from Crossman suggests Crossman may harbor retaliatory animus. See Barbano v. Madison County, 922 F.2d 139, 143 (2d Cir.1990) (knowing and informed toleration of discriminatory interview is evidence of discrimination).
 Tate was the only program specialist given a deadline for his 1991 JOBS report and received the lowest 1991 performance rating. These incidents are not, as DHHS suggests, too remote as a matter of law from Tate's 1990 EEO complaint to be retaliatory. After Tate filed another EEO complaint, Crossman berated him for failing to comply with a possibly nonexistent sign-in policy and shuffled him to a less mainstream position. Natalie deMaar, who openly displayed a desire to retaliate after Tate's EEO activity, played a prominent role in Tate's reprimand for his interaction with the union steward. Tate has made out a prima facie case of retaliation.
 B.
 DHHS and Crossman have provided legitimate, non-retaliatory reasons for almost every adverse action taken against Tate, and, as the district court found, each explanation given by DHHS was reasonable. However, Tate has provided significant evidence that at least some of these reasons were pretextual.
 Crossman testified that he imposed deadlines on Tate for the 1991 JOBS report because, although other program specialists had shown him drafts of their reports earlier, he had no sense of Tate's progress on his report. However, Tate submitted evidence that Tate had indeed shown Crossman parts of his report and that Crossman could not remember whose drafts he had seen or when. Crossman maintains he gave Tate a lower performance rating because of the quality and timeliness of Tate's report, yet could point to no specific aspects of the report that were unsatisfactory. Crossman explained he reprimanded Tate for signing in improperly, but Tate testified that contrary to what Crossman said, he was never aware of such a policy and offered some evidence that the policy may not exist. DHHS has never offered a legitimate explanation to counter Tate's allegation that he was the only worker required to fill out an HHS Form 520 to get permission to do volunteer work--on omission that may be particularly significant since the volunteer organization was not unrelated to Tate's own EEO activity. DHHS has not defended the retaliatory statements of deMaar and Boyce which provide strong evidence of animus.
 C.
 Tate produced significant evidence of retaliatory animus and has produced the "very little evidence of discriminatory motive" necessary to raise a genuine issue of fact as to pretext. See Strother v. Southern California Permanente Medical Group, 79 F.3d 859, 870 (9th Cir.1996) (citations omitted). Viewing the evidence in the light most favorable to Tate, we find Tate has raised a triable issue of fact as to whether DHHS managers retaliated against him with adverse treatment because of his ongoing EEO complaints.
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 *
 The Honorable Fern M. Smith, District Judge, United States District Court for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While the complained-of acts must be actually adverse to be actionable under Title VII, Jordan v. Clark, 847 F.2d 1368, 1377 (9th Cir.1988), the prohibition against retaliation covers a wide range of conduct. See Smith v. Secretary of Navy, 659 F.2d 1113, 1119 n. 56 (D.C.Cir.1981) (42 U.S.C. § 2000e-3 "speaks unconditionally, without limitation to acts causing particular harms such as loss of a particular job or promotion"); Larsen, 2 Employment Discrimination § 34.04 (2d ed. 1995). Employers could easily circumvent the prohibition against retaliation if they could retaliate in ways other than those listed in § 2000e-3 with impunity